491 Pa. 102 (1980)
418 A.2d 1331
Alfred BERSHEFSKY and Mary Ann Bershefsky, His Wife, Appellants,
v.
COMMONWEALTH of Pennsylvania, DEPARTMENT OF PUBLIC WELFARE, and Farview State Hospital, Waymart, Wayne County, Pennsylvania.
Supreme Court of Pennsylvania.
Argued May 19, 1980.
Decided July 21, 1980.
*103 Henry C. McGrath, Scranton, Patrick M. Connolly, Philadelphia, for appellants.
Allen C. Warshaw, Deputy Atty. Gen., Herbert L. Olivieri, Harrisburg, for appellees.
Before EAGEN, C.J., and O'BRIEN, ROBERTS, NIX, LARSEN, FLAHERTY and KAUFFMAN, JJ.

OPINION OF THE COURT
ROBERTS, Justice.
In 1976 appellants Alfred Bershefsky and Mary Ann Bershefsky commenced this action in trespass against appellees the Commonwealth of Pennsylvania, the Department of Public Welfare, and Farview State Hospital. The complaint alleges that as a result of appellees' negligence and reckless and wanton conduct, Herschel Smith, a former Farview patient, was able to gain access to the administration building of Farview and shoot Alfred Bershefsky, a Farview employee. The Commonwealth Court, by order dated June 16, 1977, dismissed the complaint on the basis of sovereign immunity. This Court on October 6, 1979 granted the parties' joint petition to vacate the Commonwealth Court's order and remand the case in light of Mayle v. Pennsylvania Dept. of Highways, 479 Pa. 384, 388 A.2d 709 (1978), application for reargument denied, 479 Pa. 411, 390 A.2d 181 (1978)[*] and Act 152, Act of September 28, 1978, P.L. 788, §§ 1 et seq. See also Brungard v. Hartman, 483 Pa. 200, 394 A.2d 1265 (1978) (Commonwealth Court's dismissal of complaint *104 on basis of sovereign immunity vacated and remanded in light of Mayle). On remand, the Commonwealth Court dismissed the complaint on the ground that Act 152, which created for the first time in Pennsylvania statutory sovereign immunity in certain categories, barred the action.
This Court recently held in Gibson v. Commonwealth of Pennsylvania, 490 Pa. 156, 415 A.2d 80 (1980), that Act 152 cannot be constitutionally applied to actions like the present one which accrued and were in existence prior to passage of the Act. Here, as in Gibson, it was error for the Commonwealth Court to dismiss the complaint.
Accordingly, the order of the Commonwealth Court is vacated and the case is remanded for further proceedings consistent with this opinion.
NIX, J., files a dissenting opinion.
EAGEN, C.J., and O'BRIEN, J., dissent.
LARSEN, J., joins in this opinion and files a concurring opinion.
LARSEN, Justice, concurring.
I join in the majority opinion and take this opportunity to respond to Mr. Justice Nix's dissent. Mr. Justice Nix attempts to buttress his weak legal arguments with certain facts contained in a letter dated March 12, 1980, from the Pennsylvania Department of Justice, wherein the Justice Department stated that they estimated their financial exposure as a result of the Gibson case would be $68,000,000. (Footnote 10 of Dissenting Opinion).
This letter is not part of the record and the figure of $68,000,000 is unsubstantiated and unsupported by any evidence whatsoever. Obviously this figure is being `thrown-about' solely for the purpose of scaring the uninitiated.
For fantasy's sake, assume the $68,000,000 is a legitimate figure. If the Commonwealth or any other person or entity is creating that much havoc and carnage (broken bones and death) on the citizens of Pennsylvania, through intentional *105 and negligent conduct, then that wrongdoer should be answerable for damages in a court a law to those injured Pennsylvania citizens. Unless there is accountability, there will be no incentive on the part of the Commonwealth to comport itself as a responsible citizen. As I stated in my Concurring Opinion in Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A.2d 709 (1978), ". . . I can think of no greater function or more honorable pursuit than for the sovereign (Commonwealth of Pennsylvania) to care for those whom it has injured or maimed."
NIX, Justice, dissenting.
The Court today relies upon its recent decision in Gibson, et al. v. Commonwealth of Pennsylvania, et al., 490 Pa. 156, 415 A.2d 80 (1980) to find that the action in trespass instituted by appellants against the Commonwealth of Pennsylvania is not barred by the Act of September 28, 1978, P.L. 788, No. 152, § 2, 42 Pa.C.S.A. § 5110 (Act 152). I disagreed with the position taken by this Court in Gibson and I will now take this opportunity to state the reasons for that disagreement.
On July 14, 1978, in Mayle v. Pennsylvania Department of Highways, 479 Pa. 384, 388 A.2d 709 (1978), this Court finally recognized what I had urged on numerous occasions, that the doctrine of sovereign immunity in this Commonwealth rested not upon self executing constitutional foundations, but rather upon common law evolution which was wholly within the power of the courts to alter "when that principle (was) no longer consistent with the [the courts' perceived] needs of our present society." Biello v. Pennsylvania Liquor Control Board, 454 Pa. 179, 190, 301 A.2d 849, 854 (1973) (Nix, J., dissenting). Concluding "that the doctrine is unfair and unsuited to the times," this Court abolished sovereign immunity. Mayle, 479 Pa. at 386, 388 A.2d at 710. However, that this Court belatedly recognized that sovereign immunity, as it previously existed, was merely a judicially promulgated policy and that the Court eventually determined that the policy should be abandoned, did not foreclose the legislature, in its discretion, from continuing *106 that policy in certain areas it deemed appropriate by way of legislative fiat.[1]
In direct response to our ruling in Mayle,[2] the legislature with all possible haste,[3] reaffirmed sovereign immunity by passing Act 152 into law. That statute set forth eight specific instances in which suits against the Commonwealth could be maintained. See 42 Pa. C.S.A. §§ 5110(a)-(a)(8). Further, as is unquestioned by the majority, the legislature expressly provided for the retroactive application of that Act.[4]
Appellants in the case at bar alleged that the negligence of the Commonwealth, the Department of Public Welfare and Farview State Hospital permitted a former Farview patient to enter the administration building of the State *107 Hospital on March 5, 1974, and accost one of the appellants causing him injury.[5] However, no provision for the bringing of this type of claim is provided for under the waiver provisions of Act 152. It is here contended by the Commonwealth that the right of the appellants to proceed to recovery is barred by the provisions of Act 152.
The majority today, as it did in Gibson, breathes life into the claim by denying the retroactive application of Act 152 as an unconstitutional extinguishment of "a right of action which has already accrued to a claimant." Gibson, 490 Pa. at 161, 415 A.2d at 83. This "divestment of vested rights" theory, rests upon the premise that the claimant had a vested right of recovery. To support that premise the Gibson Court created a right of action by retroactively divesting the Commonwealth of its defense against such claims. Thus we have the anomalous situation of a court holding a legislative attempt at retroactivity invalid by giving retroactivity to one of its own decisions. The Gibson majority condemns the legislature for depriving claimants of a cause of action retroactively, yet it ignores its own action which strips the Commonwealth of its vested defense of immunity.
A proper analysis must begin with the initial presumption of constitutionality that is accorded to a statute that is duly enacted by the legislature. The burden of proof is placed upon that party which asserts its constitutional deficiency. Department of Environmental Resources v. Pennsylvania Power Company, 490 Pa. 399, 416 A.2d 995 (1980); Singer v. Shepard, 464 Pa. 387, 393, 346 A.2d 897, 900 (1975). Only where it "clearly, palpably and plainly violates the Constitution," may the statute be struck down. Singer v. Shepard, supra; Daly v. Hemphill, 411 Pa. 263, 271, 191 A.2d 835, 840 (1963).
*108 The prohibition against retroactive application of the law to "extinguish an accrued right" so vehemently espoused by the majority, applies equally to the abolishment of a defense. Lewis v. Pennsylvania R.R. Co., 220 Pa. 317, 69 A. 821 (1908);[6]see Rebel v. Standard Sanitary Manufacturing Co., 340 Pa. 313, 16 A.2d 534 (1940); Kay v. Pennsylvania R.R. Co., 65 Pa. 269 (1870).[7] This fact of legal reality which the majority overlooks has significant impact on the question before us. If the Court in Gibson was correct in its determination that Mayle retroactively abolished the defense of sovereign immunity, then Gibson is inconsistent in holding that the legislature could not retroactively create the bar of sovereign immunity. The same consideration that justifies the retroactive application of a judicial decision by *109 the court, applies equally to support the retroactive application of a legislative mandate. The accrual of a vested right is as compelling an argument whether it is offered to prevent a legislative extinguishment of a cause of action or to deny a judicial abolishment of a defense.
On the other hand, if the Gibson decision was wrong in applying Mayle retroactively, then the application of Act 152 is irrelevant to the instant appeal, for the bar of sovereign immunity was in effect to foreclose appellants' recovery in the present case. Thus, the critical question to be examined in determining the validity of the Gibson reasoning is its basic premise that Mayle created a vested cause of action in those claimants who had suffered as a result of the negligence of a state employee prior to the effective date of the Mayle decision.[8] To reach their result, the Gibson majority reasoned as follows:
There is no principled reason to discriminate now against appellants whose causes also accrued before Mayle but whose complaints were filed post-Mayle. Though the date of a complaint's institution is relevant to the tolling of a statute of limitations, it has no place in the determination of appellants' substantive rights. Significantly, both classes of suits affect the Commonwealth in equal measure, and therefore must be treated in like fashion. Applying Mayle, then, we hold that because appellants' claims accrued on July 20, 1977, these claims are free from the subsequently enacted statutory bar of sovereign immunity. [Footnotes omitted.] 490 Pa. at 165-166, 415 A.2d at 85.[9]
*110 Historically, decisions overruling former principles of law were given full retroactivity. Norton v. Shelby County, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886); see Linkletter v. Walker, 381 U.S. 618, 622-623, 85 S.Ct. 1731, 1733-34, 14 L.Ed.2d 601 (1964). The theory being that if the prior principle was deemed to be erroneous, it necessarily was erroneous from its inception.
. . . The judge rather than being the creator of the law was but its discoverer. Gray, Nature and Sources of the Law 222 (1st ed. 1909). In the case of the overruled decision, . . . it was thought to be only a failure at true discovery and was consequently never the law; while the overruling one, . . . was not "new law but an application of what is and therefore had been, the true law." Shulman, Retroactive Legislation, 13 Encyclopedia of the Social Sciences 355, 356 (1934).

Linkletter v. Walker at 623, 85 S.Ct. at 1734.
However, with the development of American jurisprudence, the fallacy of such a simplistic approach became obvious. "The past cannot always be erased by a new judicial declaration." Chicot County Drainage District v. Baxter State Bank, 308 U.S. 371, 374, 60 S.Ct. 317, 318, 84 L.Ed. 329 (1940). "A state in defining the limits of adherence to precedent may make a choice for itself between the principle of forward operation and that of relation backward. It may say that decisions of its highest court, though later overruled, are law none the less for intermediate transactions." Great Northern Railway Co. v. Sunburst Oil & Refining Co., 287 U.S. 358, 364, 53 S.Ct. 145, 148, 77 L.Ed. 360 (1932).
Our decision in Mayle presents an excellent example of an instance where a change was being made because of the change in time, but it was never asserted that the principle of immunity did not serve a function during the period that it remained a viable doctrine. Moreover, the inapplicability of a retroactive application is emphasized by the fact that it was never questioned that the state had the right to immunize *111 itself from suits of this nature. The Mayle majority merely concluded that Article I, Section 11 of the Pennsylvania Constitution was not self executing and that in absence of a legislative enactment creating an immunity, no immunity would thereafter exist.
Despite recent cases in which a majority of this Court accepted the Commonwealth's interpretation of article I, section 11, as the sole reason for retaining the rule of sovereign immunity, we now believe that this constitutional provision does not forbid judicial abrogation of the doctrine. Rather, "The Constitution is . . . neutral-it merely provides that the presence or absence of sovereign immunity shall be decided in a non-constitutional manner. . . ." The history of the adoption of this section indicates that the Framers of 1790 intended to allow the Legislature, if it desired, to choose cases in which the Commonwealth should be immune, but did not intend to grant constitutional immunity to the Commonwealth.

Mayle v. Pennsylvania Dept. of Hwys., 384 Pa. at 399-400, 388 A.2d at 716-717.
While I was fully in accord with the majority in Mayle, that the court had the power to abolish the court created doctrine of immunity, it was not there suggested, nor has it been argued, that it was not within the province of the legislature to make its own judgment as to the need for some form of immunity. Since it is the unquestioned right of the state to have such immunity, as the people of the state, through their legislature, may deem appropriate, it is in my judgment most inappropriate to curtail that right by giving retroactive application to the Mayle decision. Here as indicated, the legislature acted with dispatch to set forth a comprehensive scheme in this area and I must reluctantly conclude that the Gibson result was an unwarranted judicial encroachment upon a properly exercised legislative judgment.
Finally, I take issue with the Gibson Court's application of the test enunciated in Chevron Oil Co. v. Huson, 404 U.S. 97, *112 106-107, 92 S.Ct. 349, 355, 30 L.Ed.2d 296 (1971) for determining whether to give a judicial decision retroactive effect. That test requires equal application of each factor, not a favored treatment of one over the other.
And, in the last few decades, we have recognized the doctrine of nonretroactivity outside the criminal area many times, in both constitutional and nonconstitutional cases.
* * * * * *
In our cases dealing with the nonretroactivity question, we have generally considered three separate factors. First, the decision to be applied nonretroactively must establish a new principle of law, either by overruling clear past precedent on which litigants may have relied, . ..
. . . Second, it has been stressed that "we must . . weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation." . . . Finally, we have weighed the inequity imposed by retroactive application, for "[w]here a decision of this Court could produce substantial inequitable results if applied retroactively, there is ample basis in our cases for avoiding the `injustice or hardship' by holding of nonretroactivity." [Citations omitted.]

Chevron Oil Co. v. Huson at 106-107, 92 S.Ct. at 355.
In my judgment the application of the considerations suggested in Chevron virtually compels the finding that our decision in Mayle should not have been given retroactive application. First, the Mayle decision clearly established a new principle of law by overruling the doctrine of sovereign immunity which was firmly entrenched in this jurisdiction and heavily relied upon by the Commonwealth. Second, the doctrine sought to protect the peoples of this Commonwealth as sovereign from incurring liability without consent. The retrospective operation of the Mayle decision frustrated that end by exposing the Commonwealth to enormous potential liability where there has been no consent to such liability. *113 And finally, as previously noted, the decision extinguished a defense accrued in the Commonwealth while creating a right of recovery in appellants thereby producing a substantial inequitable result. These considerations coupled with the injustices of lulling the Commonwealth into a state of false security should have mandated the conclusion that Mayle not be retroactively applied. Today's decision graphically demonstrates that the Gibson result will produce substantial diversion of public monies and in all likelihood reflects only the tip of the iceberg which the majority is sailing blissfully towards.[10]
NOTES
[*] The Commonwealth's application for reargument requested that this Court give Mayle prospective effect only.
[1] "This Court has long recognized the applicability of the principles of `the inviolability of final judgments of the judiciary' in criminal cases as well as civil cases." Commonwealth v. Sutley, 474 Pa. 256, 265, 378 A.2d 780, 784 (1977). Clutching at that precept the majority in Gibson concluded that the enactment of Act 152 offended the separation of powers doctrine. Yet Mayle did not render a final judgment or decree ordering recovery for the plaintiffs involved. It merely abrogated a judicially created defense, leaving the legislature free to enact a legislative defense without fear of encroaching upon the judicial power.
[2] Section 5(a) of Act 152 provides:

(a) This act is intended to specifically respond to and prescribe limitations on the decision of Mayle v. Commonwealth, decided by the Supreme Court on July 14, 1978.
[3] Mayle was decided on July 14, 1978 and Act 152 was passed on September 28, 1978 (immediately effective). The Act was passed in a little over two months which is an impressive feat of legislative efficiency.
[4] Section 5(b) of Act 152 provides in pertinent part:

The following provisions applying this act to actions accrued on the effective date of this act, and its intended retroactive effect. . .. It is the intention of the General Assembly that the express limited waiver from bar of suit, and limited waiver of the defense of sovereign immunity contained in this act, shall be uniformly applied to all actions which are not otherwise barred, and shall not depend upon the fortuitousness of the date of the accruing of the action, or the diligence with which it was prosecuted or its status within the judicial system on July 14, 1978. [Emphasis added.]
[5] I express no opinion as to the propriety of that portion of appellants' suit which alleges "reckless and wanton conduct" by the Commonwealth. Act 152 apparently precludes only "damages arising out of a negligent act or omission . . .." 42 Pa. C.S.A. § 5110(a).
[6] The Court in Lewis v. Pennsylvania R.R. Co., 220 Pa. at 322-24, 69 A. 821, in denying the legislation's retroactive application, recognizing that to permit retroactivity would divest the defendant of right to assert a defense which had vested wrote:

A legal exemption from a demand made by another is a vested right, which the legislature may not interfere with. . . .
* * * * * *
If the law of the case at the time when it became complete is such an inherent element in it that a plaintiff may claim it as a vested right, on what possible ground can it be held that a defendant has no vested right with respect to an exemption or defense? The authorities make no distinction between them. "So he who was never bound either legally or equitably cannot have a demand created against him by mere legislative action:" Cooley's Constitutional Limitations, page 528. "A vested right is property, as tangible things are, when they spring from contract or the principles of the common law. There is a vested right in an accrued cause of action; in a defense to a cause of action; . . .. Since the effect of the construction contended for would be to impose a liability for a past occurrence where none existed at the time, or, what is the same thing, take away a legal defense available at the time, it is to be avoided. [Emphasis added.]
Id., 220 Pa. at 322-324, 69 A. at 822-23.
[7] There is no question that the legislature could constitutionally prospectively foreclose access to the court for a cause of action. Additionally, it is well settled that a legislature has the right and authority to alter the common law and in so doing take away a cause of action that was previously in existence as long as it does not effect an accrued right. Parker v. Children's Hospital of Philadelphia, 483 Pa. 106, 394 A.2d 932 (1978); Singer v. Shepard, 464 Pa. 387, 346 A.2d 897 (1975).
[8] It should be emphasized that we are concerned here with a cause of action that arose before our decision in Mayle. I do not at this point intend to express a view as to those claims which came about after the decisional date of Mayle, July 14, 1978, and prior to the enactment of Act 152, September 28, 1978.
[9] The majority attempts to place a veil over the primary reason for its finding of an accrued right of action in the appellants, namely the retroactive application of Mayle, by implicitly suggesting that the cause of action against the Commonwealth always existed and that it was merely the access to the courts which had been denied by the doctrine of sovereign immunity. This illusory distinction is mere sophistry which only serves to obfuscate rather than clarify the true basis of the Gibson decision and its finding of an accrued right.
[10] According to a letter dated March 12, 1980, from the Pennsylvania Department of Justice, the Commonwealth's estimated financial exposure up to that date in the Gibson case alone was $68,000,000.