490 A.2d 415

**John C. BALSHY, et al., Appellants,**

**v.**

**Gary W. RANK, Appellee.**

Supreme Court of Pennsylvania.

Argued Jan. 21, 1985.

Decided April 2, 1985.

386

Maura A. Johnston, Andrew S. Gordon, Allen C. Warshaw, Harrisburg, for appellants.

Gilbert B. Abramson, Sharon M. Friel, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDERMOTT, ZAPPALA and PAPADAKOS, JJ.

## OPINION OF THE COURT

FLAHERTY, Justice.

We granted the petition for permission to appeal of the Commonwealth of Pennsylvania, the Pennsylvania State Police, and John Balshy, Dean Shipe, Joseph Van Nort and John Holtz, individual Troopers of the Pennsylvania State Police, pursuant to 42 Pa.C.S.A. § 702 and Pa.R.A.P. 1311 et seq., from an interlocutory order of Commonwealth Court, 475 A.2d 182, retransferring to the Court of Common Pleas of Dauphin County a matter which had previously been retransferred from Common Pleas Court to Commonwealth Court, to decide which forum has subject matter jurisdiction of the underlying controversy. For the reasons which follow, we hold that exclusive, original subject matter jurisdiction is vested in the Court of Common Pleas.

The incidents on which the instant civil action is founded occurred during the investigation and prosecution, from approximately April 24, 1979 until appellee's acquittal on September 26, 1979, of criminal charges in connection with a homicide. After his acquittal, appellee commenced the instant civil action against appellants in Commonwealth Court. The complaint avers causes of action against all appellants under 42 U.S.C.A. §§ 1983 and 1985 for violations of appellee's civil rights by the Troopers' allegedly obtaining a search warrant based on falsehood; obtaining an arrest warrant without probable cause; preventing appellee from seeing his counsel; fabricating, destroying or concealing evidence in the murder trial; and assaulting and battering appellee. Appellee seeks damages from the Commonwealth and the Pennsylvania State Police for failure to exercise due care in selecting, training and controlling the state troopers. He also seeks damages for battery, false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress and defamation.

Believing the action to be controlled by § 761(a)(1) of the Judicial Code, Act of July 9, 1976, P.L. 586, No. 142, § 2, as amended, 42 Pa.C.S.A. § 761(a)(1) (Supp.1984–1985),

which generally vests in Commonwealth Court original jurisdiction of all civil actions against the Commonwealth government and its officers in their official capacity, on April 24, 1981 appellee filed a complaint in trespass in Commonwealth Court. That court, under 42 Pa.C.S.A. § 761(a)(1)(iv) (1981) (since amended), which provided an exception to the jurisdiction of Commonwealth Court in "actions or proceedings in trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity," *sua sponte* transferred the matter to the Court of Common Pleas of Dauphin County. On September 20, 1983, Common Pleas Court ordered the matter retransferred to Commonwealth Court inasmuch as Common Pleas Court could find no exception to the exclusive original jurisdiction of Commonwealth Court under § 761 for civil rights actions. We disapprove the practice of Courts of Common Pleas refusing jurisdiction and attempting to *"retransfer"* matters to Commonwealth Court. The proper practice in cases such as this one would be for Common Pleas Court to dismiss the action and for the parties to take an appeal. No appeal was taken. The statute having, in the interim, been amended, Commonwealth Court then reconsidered its original order in light of the amended § 761(a)(1)(v), and again ordered the matter transferred to Common Pleas Court. On motion of the Commonwealth, the matter was certified for interlocutory appeal under 42 Pa.C.S.A. § 702.

Both appellants, by the Attorney General, and appellee, by his counsel, have argued that jurisdiction of the underlying controversy is in Commonwealth Court under 42 Pa.C. S.A. § 761(a), and that paragraph (v) does not provide an exception to that court's jurisdiction. Based on our analysis of this particular case, the result would be no different if the matter were decided on § 761(a)(1)(iv) of the 1980 amendment.

The pertinent statutory provision is as follows:

## § 761. Original Jurisdiction

(a) **General Rule.**—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:

(iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units) [dealing with sovereign, governmental and official immunity];

... and

(v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

(b) **Concurrent and exclusive jurisdiction.**—The jurisdiction of the Commonwealth Court under subsection (a) shall be exclusive except as provided in section 721 (relating to original jurisdiction [of the Supreme Court])....

42 Pa.C.S.A. § 761.

 First, we affirm the order of Commonwealth Court that, as to those counts against the individual Troopers, Commonwealth Court lacks jurisdiction. The term "officer" as used in § 761(a)(1), which confers on Commonwealth Court original jurisdiction of all civil actions against officers of the Commonwealth acting in their official capacity, has not been defined by the Legislature. Guided by the principle of statutory construction that words and phrases be construed according to their common and approved usage, 1 Pa.C.S.A. § 1903(a), in *Forney v. Harrisburg State Hospital,* 18 Pa.Commw.Ct. 17, 21, 336 A.2d 709, 711 (1975), Commonwealth Court distinguished Commonwealth officers from ordinary Commonwealth employees, describing officers as those persons to whom are delegated some of the sovereign functions of government, and employees as persons who merely exercise subordinate ministerial functions. More recently the definition of "officer," as that term is

used in § 761, has been refined to include "those persons who perform state-wide policymaking functions and who are charged with the responsibility for independent initiation of administrative policy regarding some sovereign function of state government." *Opie v. Glascow, Inc.*, 30 Pa.Commw.Ct. 555, 559, 375 A.2d 396, 398 (1977). The basis for this refinement was Commonwealth Court's conclusion that it was not the intent of the General Assembly to confer on that Court original jurisdiction over cases where local courts can much more conveniently and properly make the determination as to the liability of state employees who function on an essentially local or regional basis. *Id.* Commonwealth Court's conclusions were expressly approved by our Court. *Rhines v. Herzel*, 481 Pa. 165, 169, 392 A.2d 298, 300–301 (1978); *Kulik v. Stotelmyer*, 481 Pa. 57, 59, 391 A.2d 1313, 1314–1315 (1978). Although State Troopers may be commonly known as "officers of the law," as their duties do not involve the statewide formulation or administration of policy, they are not "officers" for purposes of conferring jurisdiction on Commonwealth Court under § 761. Thus, the actions against the individual state troopers are clearly not within the original jurisdiction of the Commonwealth Court.

The more difficult question is whether Commonwealth Court has original jurisdiction with respect to the counts against the Commonwealth. Commonwealth Court held that these claims fall within the exception to that Court's jurisdiction "for actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity." § 761(a)(1)(v). Resolution of this question is aided by analysis of the evolution of § 761 in its historic context,* which shows that

---

\* § **1921. Legislative intent controls**

 (a) The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions.

 (b) When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit.

in every instance where the sovereign's immunity from tort liability was limited, the General Assembly immediately took action designed to vest jurisdiction of the new causes of action allowed against the sovereign in Common Pleas Court.

The Commonwealth Court was created in the Pennsylvania Constitution of 1968. Art. V, § 4 of that document provides that the Commonwealth Court "shall have such jurisdiction as shall be provided by law." This section was implemented by the General Assembly by passage of the Commonwealth Court Act, Act of January 6, 1970 (1969 P.L. 434, No. 185), § 8, repealed and replaced by the Appellate Court Jurisdiction Act, Act of July 31, 1970, P.L. 673, No. 223, § 401, subsequently replaced by the Judiciary Act of 1976, Act of July 9, 1976, P.L. 586, No. 142, § 761, as amended. The effect of the Commonwealth Court Act and its successors was to vest in the Commonwealth Court jurisdiction of those actions against the Commonwealth which were formerly brought in the trial court for the seat of government, to-wit, the Court of Common Pleas of Dauphin County. See, e.g., *Commonwealth v. Emhart Corp.*, 443 Pa. 397, 400, n. 1, 278 A.2d 916, 917, n. 1 (1971), *appeal dismissed,* 404 U.S. 981, 92 S.Ct. 451, 30 L.Ed.2d 364 (1971).

The Commonwealth Court Act provided, with exceptions not here relevant, for exclusive original jurisdiction in Commonwealth Court of (1) "all civil actions and proceedings against the Commonwealth, but this clause shall not be construed as a waiver by the Commonwealth of immunity to

(c) When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters:
(1) The occasion and necessity for the statute.
(2) The circumstances under which it was enacted.
(3) The mischief to be remedied.
(4) The object to be attained.
(5) The former law, if any, including other statutes upon the same or similar subjects.
(6) The consequences of a particular interpretation.
(7) The contemporaneous legislative history.
(8) Legislative and administrative interpretations of such statute.
Act of December 6, 1972, P.L. 1339, No. 290 § 3.

suit," and (2) "all civil actions and proceedings against officers of the Commonwealth in their official capacity." Section 8(a)(2)(ii) and (iii). Approximately one year later, and again in 1976, this provision was substantially reenacted in § 401 of the Appellate Court Jurisdiction Act, *supra*, and § 761 of the Judicial Code, *supra*. At the time of all these enactments, the Commonwealth and high public officials acting within the scope of their authority enjoyed absolute immunity from tort liability, *Matson v. Margiotti*, 371 Pa. 188, 88 A.2d 892 (1952) (overruled as to the issue of the Attorney General's common law powers *Commonwealth v. Schab*, 477 Pa. 55, 383 A.2d 819 (1978). By definition, all officers of the Commonwealth, for purposes of conferring original jurisdiction on Commonwealth Court, were also high public officials and immune from tort liability. Thus, actions filed against the Commonwealth and its officers acting in their official capacity, although within the original jurisdiction of the Commonwealth Court, routinely resulted in dismissal on the grounds of immunity from liability, and did not culminate in conduct of trials in that forum. Claims against other defendants, which were joined in the original action, were transferred to an appropriate Court of Common Pleas for trial. See, *Wallace v. Commonwealth, Dept. of Public Welfare*, 32 Pa.Commw. 615, 380 A.2d 930 (1977) and *Bass v. Cuyler*, 36 Pa.Commw.Ct. 74, 387 A.2d 964 (1978). But see *Freach v. Commonwealth*, 471 Pa. 558, 370 A.2d 1163 (1977) (where Section 603 of the Mental Health and Mental Retardation Act of 1966 was held to authorize suits against the Commonwealth departments and agencies and certain Commonwealth officers.) As the Commonwealth Court Act and its successors were passed at a time when the Commonwealth and its officials acting within the scope of their official duties had absolute immunity from tort actions, it becomes apparent that when the General Assembly established Commonwealth Court's original jurisdiction of actions against the Commonwealth and its officers, that body could not have envisioned that the Commonwealth Court would become a forum for the *routine* trial of tort claims.

When, in 1978, this Court abrogated the doctrine of sovereign immunity, *Mayle v. Pa. Depart. of Highways*, 479 Pa. 384, 388 A.2d 709 (decided July 14, 1978), the General Assembly, by what has been termed "an impressive feat of legislative efficiency," *Bershefsky v. Commonwealth, Dept. of Public Welfare*, 491 Pa. 102, 106, n. 3, 418 A.2d 1331, 1333, n. 3 (1980) (Mr. Justice Nix, dissenting), immediately created statutory sovereign immunity by Act of September 28, 1978, P.L. 788, No. 152, immediately effective, formerly 42 Pa.C.S.A. § 5101 et seq., presently found at 42 Pa.C.S.A. § 8501 et seq. (1982). Act 152 expressed a clear intent of the General Assembly to bar all actions which accrued prior to the date of its enactment. Act 152, which responded to this Court's decision in *Mayle, supra,* and attempted to bar all tort actions against the Commonwealth except in certain limited circumstances enumerated therein, also provided an additional exception to Commonwealth Court's original jurisdiction for "actions on claims in which sovereign immunity has been waived pursuant to section 5110 (relating to limited waiver of sovereign immunity)...." Act 152 further provided that the proper forum for actions against the Commonwealth, as to which immunity was waived under § 5110 was the Court of Common Pleas, and that proper venue was "in a county in which the principal or local office of the Commonwealth agency is located or in which the cause of action arose or where the transaction or occurrence took place out of which the cause of action arose." Thus, it appears that once sovereign immunity was abrogated, paving the way for actions for tort liability against the Commonwealth to be brought in Commonwealth Court, the General Assembly immediately took action to remove from Commonwealth Court the responsibility for any resulting routine tort litigation.

The retroactivity of Act 152 quickly fell under constitutional attack, and the intent of the Legislature, that no tort litigation be brought in Commonwealth Court, was frustrated when this Court refused to give Act 152 retroactive effect. *Gibson v. Commonwealth,* 490 Pa. 156, 415 A.2d 80

(1980). The refusal of this Court to apply Act 152 retroactively resulted in an anomaly: Tort claims against the Commonwealth as to which the General Assembly had waived sovereign immunity by Act 152 fell within an exception to Commonwealth Court's original jurisdiction and were, thus, properly commenced in Common Pleas Court, while tort actions brought against the Commonwealth as to which the General Assembly had not waived sovereign immunity by Act 152 were properly commenced in Commonwealth Court. In 1980, § 761, was amended again to provide an additional exception to Commonwealth Court's original jurisdiction for "actions or proceedings in trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity." This Amendment was retroactive to June 27, 1978, the effective date of the Judicial Code and the first enactment of § 761. Act of December 5, 1980, P.L. 1104, No. 189, §§ 1 and 7.

██ Thus, we see that each time it became apparent to the General Assembly that actions for tort liability could be maintained against the Commonwealth or its officers in Commonwealth Court the General Assembly amended § 761 to provide that those actions be brought in Common Pleas Court and not in Commonwealth Court. This leads us inescapably to the conclusion that there exists a legislative intent that all actions against the Commonwealth or its officers acting in their official capacity, asserting tort liability, are outside the original jurisdiction of Commonwealth Court.

██ The final question for our consideration then is whether the instant controversy is an "action or proceeding in the nature of a trespass" under § 761(a)(1)(v). The parties have raised no question whether the action against the Commonwealth and the State Police for failure to exercise due care in selecting, training and controlling the individual troopers, and the action for battery, false imprisonment, abuse of process, malicious prosecution, intentional infliction of emotional distress and defamation are actions in the nature of trespass. The parties argue that the

actions under 42 U.S.C. §§ 1983 and 1985 are not actions in the nature of a trespass because they are based on statutory and not common law remedies. We reject this argument.

Under early English common law practice, actions at law were commenced by issuance of a writ which authorized the law court in which the action was directed to be brought to assume jurisdiction of the action and which enforced the appearance of the defendant. The number and forms of those writs were limited and strictly prescribed, and no action could be brought unless it could fit into the form of some recognized writ. An action in trespass would lie "for redress in the shape of money damages for any unlawful injury done to the plaintiff, in respect either to his person, property, or rights, by the immediate force and violence of the defendant." BLACK'S LAW DICTIONARY, Rev. 4th Ed. 1674 (1968). An action of trespass was directed at serious and forcible breaches of the King's peace vi et armis, whether for injuries to person or to property, of a kind likely to provoke immediate retaliation. Where a writ of trespass did not afford a remedy under the particular facts of the case, the plaintiff had to bring a special action on his own case. This gave rise to the name "action on the case". Thus, trespass on the case, or an action on the case, became a supplement to the parent and generic action of trespass. It was designed to afford a remedy for wrongful conduct resulting in injuries which were not forcible or direct. PROSSER on TORTS, 4th ed., 28–29 (1971).

Although characterization of actions according to these ancient writs remained viable in early Pennsylvania pleading and practice, this practice has long since been abandoned. Since the Act of May 25, 1887, P.L. 271, § 2, all actions ex delicto, which had formerly been recoverable in trespass or trespass on the case, were sued for and recovered in an "action of trespass."

The remedies available under §§ 1983 and 1985, which provide that every person who acts under color of state law to deprive another of a constitutional right, and that per-

sons who conspire for the purpose of depriving any person of the equal protection of the laws shall be answerable to the plaintiff in an action for damages, clearly create a species of tort liability. As such, these claims are pressed in a civil action, sounding in trespass, and the parties' argument that actions under 42 U.S.C. §§ 1983 and 1985 are not actions in the nature of a trespass is totally without merit.

We hold today the clear intent of the General Assembly is that actions against the Commonwealth or its officers acting in their official capacity for money damages based on tort liability are outside the original jurisdiction of Commonwealth Court and are properly commenced in the Courts of Common Pleas.

Order of Commonwealth Court is affirmed.

HUTCHINSON, J., did not participate in the consideration or decision of this case.