IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jordan Spallone, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1275 C.D. 2024 |
| Pennsylvania State Police | : | |
| | | |
| Lauren Spallone, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1276 C.D. 2024 |
| Pennsylvania State Police | : | Argued: March 4, 2026 |

BEFORE:   HONORABLE RENÉE COHN JUBELIRER, President Judge
HONORABLE PATRICIA A. McCULLOUGH, Judge
HONORABLE MICHAEL H. WOJCIK, Judge
HONORABLE CHRISTINE FIZZANO CANNON, Judge
HONORABLE LORI A. DUMAS, Judge
HONORABLE STACY WALLACE, Judge
HONORABLE STELLA M. TSAI, Judge

OPINION
BY JUDGE FIZZANO CANNON                          FILED: May 28, 2026

Jordan Spallone and Lauren Spallone, husband and wife, petition for review of identical July 25, 2024, orders of the Court of Common Pleas of Westmoreland County (trial court). The Spallones' claims against their employer, the Pennsylvania State Police (PSP), arose under the Pennsylvania Whistleblower Law.[1] The trial court determined that it lacked subject matter jurisdiction over the Spallones' claims, sustained the PSP's preliminary objections to that effect, and transferred the cases to this Court's original jurisdiction. Upon review, we affirm and direct the trial court to effectuate transfer to this Court.

_____

[1] Act of December 12, 1986, P.L. 1559, *as amended*, 43 P.S. §§ 1421-1428.

# I. Factual and Procedural Background

The Spallones have been married since 2015 and both work for the PSP. Reproduced Record (R.R.) at 5a. They initially filed their complaints with the trial court in August 2023. Trial Ct. Order & Op. at 1. After the PSP's initial preliminary objections, the Spallones filed amended complaints in October 2023, which are the basis of this matter. *See id.*

Mr. Spallone's amended complaint averred as follows. He began with the PSP in 2003 and became a sergeant in 2016. R.R. at 5a. In 2020, a superior officer instructed him to drop charges against individuals involved in an incident and to direct another officer to alter investigative findings regarding the incident. *Id.* at 6a-7a. He complied, feeling he had no other option, but subsequently reported his concerns to higher-level PSP officials. *Id.* at 7a-8a. Days later, he was called to a meeting about his report and his union representative was told to leave before the meeting began. *Id.* at 8a-9a. He was then subjected to what he believed was an improper internal affairs investigation, attempts to remove him from his field command and transfer him to a desk job, and multiple refusals to grant him promotions he believed he had earned based on well-established criteria. *Id.* at 9a-11a.

Mrs. Spallone's complaint averred as follows. She began with the PSP in 2009 and became a sergeant in 2019. R.R. at 22a. Since the above-described events regarding Mr. Spallone, she did not get promotions that she believed she had earned based on well-established criteria. *Id.* at 28a. A supervisor told her it was because she is married to Mr. Spallone. *Id.* at 23a.

The Spallones asserted that in violation of the Whistleblower Law, the PSP retaliated against them for Mr. Spallone's decision to report his supervisor's wrongdoing. R.R. at 12a-13a & 29a-30a. They claimed loss of seniority rights, loss of higher wages from ungranted promotions, reputational damage, and mental and other damages. *Id*. at 13a & 30a. They sought promotions to the rank of lieutenant, restoration of lost pay, employment status, and rights, and money damages for each of them in excess of $30,000. *Id*. The PSP filed preliminary objections asserting that the Spallones' amended complaints were legally insufficient because Whistleblower Law claims against state actors and entities fall within the exclusive original jurisdiction of this Court rather than our trial-level courts. *Id*. at 37a-38a & 43a-44a.

In July 2024, after briefing and argument, the trial court issued identical orders sustaining the PSP's preliminary objections in both cases. The trial court concluded that although no published decisions expressly lodged jurisdiction over Whistleblower Law claims against state entities with this Court, there is a "clear and persuasive pattern of holdings" to that effect, which the trial court declined to contradict. Trial Ct. Orders, July 25, 2024, at 3-4. Thus, the trial court ordered the Spallones' cases transferred to this Court. *Id*. at 4. The Spallones filed motions to certify the trial court's otherwise interlocutory order for appeal to this Court, which the trial court granted. Trial Ct. Orders, Aug. 30, 2024, at 1. The Spallones then sought this Court's permission to appeal, which we granted; we also consolidated their cases for purposes of this appeal. Petitions for Permission to Appeal, Sept. 27, 2024, at 1; Orders, Jan. 7, 2025. These matters have been briefed and argued *en banc* and are now ripe for disposition.

## II. Issue

The Spallones argue that Whistleblower Law claims seeking money damages against the Commonwealth or its agencies may be brought in trial-level courts because they are not within this Court's original and exclusive jurisdiction as set forth in Section 761(a)(1) of our Judicial Code.[2]  42 Pa.C.S. § 761(a)(1). Spallones' Br. at 13-16.  They assert that their claims fall within the exception at Section 761(a)(1)(v) for "actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass."  42 Pa.C.S. § 761(a)(1)(v).  *Id.*

## III. Discussion

Section 761 of the Judicial Code states in relevant part:

(a) **General rule**.--The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

> (1) Against the Commonwealth government, including any officer thereof, acting in his official capacity, except:
>
> . . . .
>
> (v) actions or proceedings in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass.

42 Pa.C.S. § 761(a)(1).

---

[2] 42 Pa.C.S. §§ 101-9913.

In *Balshy v. Rank*, 490 A.2d 415 (Pa. 1985), which concerned federal civil rights claims arising from an allegedly wrongful arrest and prosecution, the plaintiff sought money damages under Sections 1983 and 1985 of Title 42 of the United States Code. *Id*. at 416 (analyzing 42 U.S.C. §§ 1983 & 1985). Our Supreme Court characterized the plaintiff's claims as entailing "a species of tort liability" and concluded that such claims "are outside the original jurisdiction of Commonwealth Court and are properly commenced in the Courts of Common Pleas." *Id*. at 420-21. Similarly, in *Miles v. Beard*, 847 A.2d 161 (Pa. Cmwlth. 2004), an inmate sought money damages for Section 1983 violations relating to kosher meals, which he had received at prior correctional facilities. *Id*. at 163. This Court concluded that the inmate's allegations belonged at a trial-level court because "this Court lacks original jurisdiction over tort actions for money damages that are premised on either common law trespass or a civil action for deprivation of civil rights." *Id*. at 164.

Money damages claims for violations of other statutory arrangements must also be brought in our trial-level courts. In *Hill v. Department of Environmental Protection*, 679 A.2d 773 (Pa. 1996), the plaintiff asserted employment discrimination under two federal laws, the Pennsylvania Constitution, and the Pennsylvania Human Relations Act (PHRA).[3] Our Supreme Court explained:

> These statutory provisions permit Hill to seek monetary damages for unlawful injuries done in the employment context. As such, these claims are in the nature of an action in tort. *See Balshy, supra*. Therefore, original jurisdiction over Hill's complaint rests with the Lycoming County Court of Common Pleas.

---

[3] Act of October 27, 1955, P.L.744, *as amended*, 43 P.S. §§ 951-963.

*Id*. at 774. In fact, the PHRA expressly states that once certain procedural prerequisites are met, a plaintiff "shall be able to bring an action in the courts of common pleas of the Commonwealth based on the right to freedom from discrimination granted by this act." 43 P.S. § 962(c)(1).

Since *Balshy* and *Hill*, our courts have also concluded that employment-oriented money damages claims not sounding in either federal civil rights or statutory arrangements like the PHRA, but based on traditional common law torts, are also properly brought within our trial-level courts. In *Stackhouse v. Commonwealth*, 832 A.2d 1004 (Pa. 2003), the plaintiff claimed that the PSP, her employer, harmed her privacy and reputational interests in the course of an internal investigation in association with her application for a promotion. *Id*. at 1006. Our Supreme Court concluded that this Court lacked jurisdiction and returned the case to the trial-level court because the "core" of the plaintiff's complaint sounded in traditional tort liability for an unlawful injury and for which the Commonwealth formerly enjoyed immunity. *Id*. at 1007-09 (citing *Balshy*); *see also Lynn v. Smith*, 566 A.2d 360, 362 (Pa. Cmwlth. 1989) (declining jurisdiction where plaintiff claimed wrongful discharge and intentional infliction of emotional distress against state agency in connection with employment termination). Thus, it is generally settled that claims against state entities for money damages that are based on tort theories or statutes that are analogous to tort law will not fall within this Court's original jurisdiction and must be directed to our trial-level courts.

Returning to Section 761, this Court possesses exclusive, original jurisdiction over "all civil actions or proceedings . . . [a]gainst the Commonwealth government[.]" 42 Pa.C.S. § 761(a)(1). With regard to the exception at Section 761(a)(1)(v), this Court does not have jurisdiction over "actions or proceedings in

6

the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity and actions or proceedings in the nature of assumpsit relating to such actions or proceedings in the nature of trespass." 42 Pa.C.S. § 761(a)(1)(v). As our Supreme Court explained in *Balshy*, after the abrogation of common law sovereign immunity in 1978, which "pav[ed] the way for actions for tort liability against the Commonwealth to be brought in Commonwealth Court," the General Assembly "immediately took action to remove from Commonwealth Court the responsibility for any resulting routine tort litigation":

> [E]ach time it became apparent to the General Assembly that actions for tort liability could be maintained against the Commonwealth or its officers in Commonwealth Court the General Assembly amended § 761 to provide that those actions be brought in Common Pleas Court and not in Commonwealth Court. This leads us inescapably to the conclusion that there exists a legislative intent that all actions against the Commonwealth or its officers acting in their official capacity, asserting tort liability, are outside the original jurisdiction of Commonwealth Court.

490 A.2d at 419-20.

Accordingly, the legislature has made clear that causes of action for money damages against the Commonwealth or its entities that are in "the nature of trespass," meaning that the core of the action sounds in common law torts or can be reasonably analogized to tort liability, must be brought in our trial-level courts. *See Stackhouse*, 832 A.2d at 1007 (stating that the plaintiff's assertions of invasion of privacy, defamation, and infliction of emotional distress "are tort claims in the nature of trespass within the meaning of Section 761(a)(1)(v)"); *Hill*, 679 A.2d at 774 (concluding that the plaintiff's claims under the PHRA and other theories "are in the nature of an action in tort"); *Balshy*, 490 A.2d at 420 (describing plaintiff's federal civil rights claims as "a species of tort liability").

7

In essence, "the policy consideration underlying tort law is the protection of persons and property from losses resulting from injury to th[ose] persons or property." *Hazleton Area Sch. Dist. v. Bosak*, 671 A.2d 277, 283 (Pa. Cmwlth. 1996) (citing Restatement (Second) of Torts § 901 (A.L.I. 1977)). By contrast, the Whistleblower Law has never been characterized as sounding in or analogous to common law tort liability. In *O'Rourke v. Department of Corrections*, 778 A.2d 1194 (Pa. 2001), which was brought initially in this Court's original jurisdiction, our Supreme Court stated:

> [W]e believe that the Whistleblower Law is not primarily designed to punish an employer for harboring retaliatory motives, but is, rather, chiefly a remedial measure intended to enhance openness in government and compel the government's compliance with the law by protecting those who inform authorities of wrongdoing. In enacting the statute, the General Assembly aimed to effectuate such design by ensuring that employees are not discouraged from reporting violations of legal or ethical codes. Additionally, recovery under the statute is proportionate to the harm suffered, as punitive damages are not available.

*Id*. at 1202-03 (citations, footnote, and quotation marks omitted). The Supreme Court added that to the extent some aspects of the Whistleblower Law can be construed as punitive to employers, "such provisions are secondary to—and supportive of—the primary purpose of the statute, which is to encourage employees to come forward in good faith with information about substantial illegal or unethical conduct." *Id*. at 1203 n.11. Relatedly, in *Bailets v. Pennsylvania Turnpike Commission*, 181 A.3d 324 (Pa. 2018), our Supreme Court reiterated that the aspects of the Whistleblower Law that entail waiver of sovereign immunity, as expressed in the Section 761(a)(1)(v) exception to this Court's original jurisdiction, do not negate its primarily remedial nature:

> Although we recognize the [Whistleblower] Law's design perhaps entails overlapping purposes of waiving sovereign immunity on the one hand, and of compelling compliance by protecting those who expose wrongdoing on the other, we cannot accept [the employer's] conclusion the sovereign immunity waiver aspects of the [Whistleblower] Law override its remedial protective aspects when it comes to determining the precise meaning of the phrase "actual damages" under the [Whistleblower] Law. . . . Instead, we view the immunity waiver aspect of the [Whistleblower] Law as supportive of its primary purpose—to protect whistleblowers who come forth with good faith reports of wrongdoing.

*Id*. at 333 (citations and footnotes omitted).

Moreover, unlike most tort-oriented claims, Whistleblower Law claims are not tried before a jury. *Zenak v. Police Athletic League of Phila.*, 132 A.3d 541, 553-55 (Pa. Cmwlth. 2016). We have also held that where the Whistleblower Law applies in the context of at-will public or governmental employment, the tort of wrongful termination will generally not be available to the plaintiff. *Javitz v. Luzerne Cnty.*, 344 A.3d 505, 520-21 (Pa. Cmwlth. 2025). Thus, the basic allegations that constitute a claim under the Whistleblower Law have been treated as distinct from and not analogous to any tort counterpart.

Unlike the PHRA, the Whistleblower Law does not expressly direct claims to our trial-level courts. Rather, it states: "A person who alleges a violation of this act may bring a civil action *in a court of competent jurisdiction* for appropriate injunctive relief or damages, or both, within 180 days after the occurrence of the alleged violation." 43 P.S. § 1424(a) (emphasis added). Generally, Whistleblower Law cases against localities and local agencies have been brought in trial-level courts and cases against the Commonwealth or its agencies have been brought in this Court. For example, in *Carpenter v. William Penn School District*, 295 A.3d 22 (Pa.

9

Cmwlth. 2023), the plaintiff brought his Whistleblower Law claims against the school district in the county court of common pleas, whose jurisdiction over the case was not in dispute. *Id*. at 25. By contrast, in *Bailets*, the plaintiff brought his Whistleblower Law claims against the state agency in this Court's original jurisdiction, which was not in dispute. 181 A.3d at 327. *See also O'Rourke*, 778 A.2d at 1196 (same); *Golaschevsky v. Dep't of Env't Res.*, 683 A.2d 1299, 1300 (Pa. Cmwlth. 1996) (same).

When the issue of jurisdiction has arisen in Whistleblower Law matters against state entities, we have maintained this distinction, albeit in unpublished cases. In *Bradley v. West Chester University* (Pa. Cmwlth., No. 368 C.D. 2019, filed Jan. 10, 2020), 2020 WL 118614 (unreported),[4] the plaintiff, a budget and financial director for the university, which is part of the Pennsylvania State System of Higher Education (PASSHE), was terminated after challenging what she believed was a legally and ethically questionable directive. *Id*., slip op. at 2, 2020 WL 118614, at *1. She sued the university, PASSHE, and individual defendants in a trial-level court, asserting Whistleblower Law and emotional distress claims. *Id*., slip op. at 3, 2020 WL 118614, at *1. Months later, that court issued a judgment of *non pros* and the matter reached this Court in our appellate capacity. *Id*., slip op. at 4, 2020 WL 118614, at *2. Although the plaintiff brought her case in a trial-level court, she argued on appeal that the trial-level court lacked jurisdiction over her claims and that the judgment of *non pros* should be vacated and the case transferred to this Court's original jurisdiction. *Id*., slip op. at 5, 2020 WL 118614, at *2. The defendants

---

[4] Under Section 414(a) of this Court's Internal Operating Procedures, an unpublished memorandum opinion of this Court issued after January 15, 2008, although not binding precedent, may be cited for its persuasive value. 210 Pa. Code § 69.414(a).

agreed that this Court had jurisdiction over the plaintiff's Whistleblower Law claims but maintained that the trial-level court had jurisdiction over her tort claims. *Id.*

This Court first noted in *Bradley* that the plaintiff brought her Whistleblower Law claim "against two Commonwealth entities—PASSHE and the University—thereby bestowing on this Court exclusive, original jurisdiction over her claim pursuant to Section 761(a)(1) of the Judicial Code[.]" *Bradley*, slip op. at 7, 2020 WL 118614, at *3. We then noted ancillary jurisdiction over her Whistleblower Law claims against the individual defendants and her common law tort claims, depriving the trial-level court of subject matter jurisdiction over the entire case. *Id.*, slip op. at 7-11, 2020 WL 118614, at *3-4.

In *Vance v. Cheyney University of Pennsylvania* (Pa. Cmwlth., No. 210 M.D. 2017, filed July 8, 2021), 2021 WL 2834612 (unreported), the plaintiff originally filed multiple claims against another PASSHE university in a trial-level court, which dismissed the plaintiff's Whistleblower Law count because "the Commonwealth Court maintain[ed] original and exclusive jurisdiction over the whistleblower claim" against a state entity. *Id.*, slip op. at 1 n.1, 2021 WL 2834612, at *1. The plaintiff did not dispute the trial-level court's actions or explanation and refiled her claim in this Court's original jurisdiction. *Id.*, slip op. at 1 n.1, 2021 WL 2834612, at *1.

In *Lee v. Department of Corrections* (Pa. Cmwlth., No. 714 M.D. 2019, filed July 14, 2022), 2022 WL 2720095 (unreported), the plaintiff initially sued the state agency in a trial-level court claiming wrongful termination and Whistleblower Law violations. *Id.*, slip op. at 1 n.1, 2022 WL 2720095, at *1. The trial court transferred the case to this Court because "this Court has exclusive original jurisdiction over actions brought against Commonwealth agencies and officers." *Id.*,

slip op. at 2, 2022 WL 2720095, at *1. As in *Vance*, the plaintiff in *Lee* did not dispute or appeal the trial court's actions or explanation. We note that "[e]ven where a party fails to raise the issue, it is still the affirmative duty of [a c]ourt to consider the issue of subject matter jurisdiction." *Martin v. Zoning Hearing Bd. of W. Vincent*, 230 A.3d 540, 544 (Pa. Cmwlth. 2020) (quotation marks omitted). That our Supreme Court has never objected to this Court assuming original and exclusive jurisdiction over Whistleblower Law claims against state entities suggests at least an implicit endorsement of this approach.

Here, the trial court concluded that it lacked subject matter jurisdiction over the Spallones' Whistleblower Law claims against the PSP. Trial Ct. Order & Op. at 3-4. The trial court acknowledged that *Bradley*, *Vance*, and *Lee* are unpublished but maintained that they "show a clear and persuasive pattern of holdings" reflecting that this Court "considers itself to have original jurisdiction in Whistleblower Law claims against Commonwealth entities." *Id.* The trial court declined to "contradict that practice." *Id*.

The Spallones argue that money damages claims under the Whistleblower Law are "materially indistinguishable" from employment-based money damages claims that have been deemed suitable for origination in trial-level courts. Spallones' Br. at 13. The Spallones claim, for example, that no significant difference exists between employment discrimination claims under the PHRA, which protects a worker's immutable traits such as race, age, or gender, and claims under the Whistleblower Law, which protects workers who report governmental wrongdoing. *Id*. at 14. They assert that any policy differences between the two statutes are immaterial. *Id*. They aver that *Vance* and *Lee*, in addition to being nonprecedential, are inapposite because jurisdiction was not directly in dispute in

12

either case. *Id*. at 14-15. The Spallones further assert that *Bradley*, where jurisdiction was at issue, was wrongly decided because it "wandered astray in attempting to distinguish between" the plaintiff's Whistleblower Law and common law tort claims, "resulting in an improper exercise" of this Court's original jurisdiction over the former and ancillary jurisdiction over the latter. *Id*. at 15.

The PSP responds that Whistleblower Law claims against state agencies clearly fit within Section 761's general rule that this Court has exclusive and original jurisdiction over all actions against the Commonwealth government. PSP's Br. at 11. The PSP notes that in *O'Rourke*, which was originally brought in this Court, our Supreme Court considered the matter in its appellate jurisdiction and did not raise an issue of this Court's jurisdiction, thus tacitly acknowledging the propriety of how that case proceeded. *Id*. at 13. The PSP adds that reading Section 1424 of the Whistleblower Law with Section 761 of the Judicial Code reveals that trial-level courts are "court[s] of competent jurisdiction" for claims against localities and local agencies that do not fit within Section 761's general rule, while this Court is the "court of competent jurisdiction" for claims against the state and its agencies because they do fit within Section 761's general rule. *Id*. at 14. The PSP points out that if the General Assembly wished for all Whistleblower Law claims to begin in trial-level courts, it would have expressly said so as it did in the PHRA. *Id*. at 14 & 19-20. To the PSP, that the legislature did not do so demonstrates the propriety of our courts' longstanding practice of "splitting up" Whistleblower Law cases depending on the nature of the defendant as either a local or state entity. *Id*.

The PSP adds that the Section 761(a)(1)(v) exception to this Court's original jurisdiction does not apply here. PSP's Br. at 16. The PSP avers that there is a meaningful difference between the remedial contours of the Whistleblower Law,

13

which is intended to discourage government wrongdoing, and the federal civil rights claims in *Balshy*, which arose out of constitutional protections against bodily and property harm in the form of unreasonable searches and seizures and were, as our Supreme Court explained, a "species of tort liability." *Id*. at 16-17 & 20. Similarly, the PSP distinguishes *Stackhouse*, where the claims were not statutory at all, but were standard tort allegations that fit readily within the exception. *Id*. at 21-22.

In their reply brief, the Spallones reiterate that their Whistleblower Law claims are materially indistinguishable from the employment discrimination claims in *Hill* that arose under the PHRA and were deemed akin to tort actions within the jurisdiction of trial-level courts, the employment-oriented tort claims in *Stackhouse*, and the general import of *Balshy*'s holding that money damages claims against state agencies based on tort liability must originate in trial-level courts. Spallones' Reply Br. at 1-5.

As outlined above, however, the Whistleblower Law is not analogous to tort litigation in the same way as civil rights litigation under Section 1983 or the PHRA. *See Harrison v. Health Network Laboratories Ltd. P'ships*, 232 A.3d 674, 684-85 (Pa. 2020) (acknowledging that the Whistleblower Law may overlap with but does not replicate Section 1983 and the PHRA). Contrary to the Spallones' argument, there is a qualitative difference between these tort-adjacent categories and the remedial Whistleblower Law. *See O'Rourke*, 778 A.2d at 1202-03. Moreover, Section 1983 and PHRA claims generally address harms to individual constitutional rights that are suited for treatment like tort claims because they are themselves "in the nature of an action in tort" or a "species of tort liability." *See Hill*, 679 A.2d at 774; *Balshy*, 490 A.2d at 420. Whistleblower Law plaintiffs are not entitled to similarly heightened protection because, for the most part, employment in

14

Pennsylvania, even with a governmental entity, is not a right but an at-will arrangement. "[T]here is no common law cause of action against an employer for termination of an at-will employment relationship" and exceptions to this rule "have been recognized in only the most limited of circumstances, where discharges of at-will employees would threaten clear mandates of public policy," such as "infringements on statutory and constitutional rights." *Weaver v. Harpster*, 975 A.2d 555, 563 (Pa. 2009).

The Spallones' Whistleblower Law claims are solely related to their at-will employment relationship with the PSP. These claims do not sound in common law torts and are not analogous to Section 1983 and PHRA claims, which are statutory in nature but grounded in personal constitutional rights, the violation of which is suitable for tort-oriented duty-breach analysis, as recognized in the Section 761(a)(1)(v) exception to this Court's original jurisdiction. The same is not true of the Whistleblower Law, which the legislature created in 1986 to address governmental wrongdoing by protecting employees who report it. *See O'Rourke*, 778 A.2d 1202-03 & n.11.

As such, there is no legal basis to conclude that Whistleblower Law claims should be treated like tort-oriented claims for money damages where jurisdiction has been reserved to our trial-level courts through the Section 761(a)(1)(v) exception to this Court's original and exclusive jurisdiction. The trial court correctly sustained the PSP's preliminary objections challenging the trial court's subject matter jurisdiction over this dispute and transferred the Spallones' cases to this Court's original jurisdiction.

## IV. Conclusion

For the above-stated reasons, the trial court's July 25, 2024, orders in these now-consolidated matters are affirmed and the trial court is directed to effectuate transfer to this Court.

_____
CHRISTINE FIZZANO CANNON, Judge

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Jordan Spallone, | : | CASES CONSOLIDATED |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1275 C.D. 2024 |
| Pennsylvania State Police | : | |
| | | |
| Lauren Spallone, | : | |
| Appellant | : | |
| | : | |
| v. | : | |
| | : | No. 1276 C.D. 2024 |
| Pennsylvania State Police | : | |

**O R D E R**

AND NOW, this 28th day of May, 2026, the identical July 25, 2024, orders of the Court of Common Pleas of Westmoreland County, which granted the preliminary objections of the Pennsylvania State Police and transferred these now-consolidated cases to be adjudicated in our original jurisdiction, are AFFIRMED. The trial court is directed to effectuate transfer to this Court.

_____
CHRISTINE FIZZANO CANNON, Judge