**Mickey MILES, Petitioner**

v.

**Jeffrey A. BEARD, PH.D., Secretary of Corrections, Department of Corrections, individually, and in his respective official capacity, Fredric A. Rosemeyer, Superintendent of Laurel Highlands, individually, and in his respective official capacity, Reverend Elizabeth Scott, individually, and in her respective official capacity, Craig Copper, Corrections Food Services Manager, individually, and in his respective official capacity, Respondents.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs Dec. 12, 2003.

Decided April 12, 2004.

---

**6.** I note that the consent order is signed by "Edgardo Vega." (Petition, ex. F.) Vega does not assert that the signature is not his.

Mickey Miles, petitioner, pro se.

Nicole L. Adams, Camp Hill, for respondents.

BEFORE: FRIEDMAN, Judge, and COHN, Judge, and McCLOSKEY, Senior Judge.

OPINION BY Judge COHN.[1]

Mickey Miles appeals an order of the Court of Common Pleas of Somerset County that dismissed a complaint filed against Jeffrey A. Beard, Ph.D., Secretary of the Pennsylvania Department of Corrections, individually, and in his official capacity, Fredric A. Rosemeyer, Superintendent of the State Correctional Institution at Laurel Highlands, (SCI–Laurel Highlands) individually, and in his official capacity, Reverend Elizabeth Scott, Chaplaincy Program Director at SCI–Laurel Highlands, individually, and in her official capacity, and Craig Copper, Corrections Food Services Manager at SCI–Laurel Highlands, individually, and in his official capacity. The order also denied Miles the right to proceed *in forma pauperis*. We are asked to determine whether original jurisdiction over this matter is in this Court rather than the court of common pleas and whether the *sua sponte* dismissal of the complaint was proper.

In his complaint, Miles alleged that he is an Orthodox Jew. Before entering the state correctional system, he had been incarcerated at the Philadelphia Detention Center and received kosher meals. He was, thereafter, transferred first to the State Correctional Institution at Grater-ford (SCI–Graterford) and later to the State Correctional Institution at Camp Hill (SCI–Camp Hill). In both state facilities he requested and received kosher meals.

On December 27, 2002, Miles was transferred to SCI–Laurel Highlands. At this facility, he submitted a request for kosher meals to Reverend Scott. On January 2, 2003, when Miles did not receive approval for kosher meals, he filed a grievance (No. 40212) to which he received no response. When Miles spoke with Reverend Scott about it, she told him that she had forwarded the grievance to the Central Office in Harrisburg and was awaiting a reply. Miles also filed requests for kosher meals with Copper, who, allegedly, made no effort to accommodate Miles.[2]

Having learned from Reverend Scott that his grievance was still pending in Harrisburg after seven months, Miles filed this complaint, together with a request to proceed *in forma pauperis*, seeking an order directing that he receive kosher meals. He also sought **compensatory and punitive damages,** declaratory relief, injunctive relief and any other relief that the court deemed just. The common pleas court dismissed the complaint, *sua sponte*, concluding that: 1) it did not have original jurisdiction over Beard, a state-wide officer; 2) Miles had not exhausted his administrative remedies; and 3) Miles had failed to state a claim upon which relief could be granted.[3] Miles then filed this appeal

---

1. This case was reassigned to the opinion writer on February 10, 2004.

2. Miles also submitted a request for kosher meals to Betsy Nightingale, the Superintendent's Assistant, after he had been denied a kosher meal on the Fast of Esther. Nightingale responded in a memorandum to Miles, stating, "I was advised that you were denied the Kosher diet. As far as the Fast of Esther on [Purim], you were provided the food items as directed by Department of Corrections Central Office." (Complaint, Exhibit 5.)

Thereafter, Miles filed additional grievances with Rosemeyer and the Chief Grievance Coordinator in Secretary Beard's Office. He also requested and received kosher food, including matzot, *i.e.*, unleavened bread, for Passover.

3. We presume the dismissal was pursuant to Section 6602(e)(2) of the Prison Litigation Reform Act, 42 Pa.C.S. § 6602(e)(2), which requires dismissal of a case concerning "prison conditions litigation" where the inmate seeks to proceed *in forma pauperis* and where

challenging these three reasons for the dismissal.

The first issue we must decide is whether the common pleas court incorrectly concluded that it lacked original jurisdiction over Beard, and that original jurisdiction would lie with this Court. The common pleas court focused only on the fact that Beard is a state-wide officer within the meaning of Section 761 of the Judicial Code, 42 Pa.C.S. § 761, *see Madden v. Jeffes,* 85 Pa.Cmwlth. 414, 482 A.2d 1162 (1984); however, that fact is not dispositive of the jurisdictional issue here for two reasons.

■■■ First, in order for this Court to have original jurisdiction, the Commonwealth party must be *indispensable. Piper Aircraft Corporation v. Insurance Company of North America,* 53 Pa.Cmwlth. 209, 417 A.2d 283 (1980). Although Beard is named in the caption of the complaint, absolutely no relief is sought against him. Beard is mentioned only once in the body of the complaint, where Miles avers that he wrote a letter to him. (¶ 17, Complaint; Ex. 10 of Complaint (cash slip indicating letter was mailed)). Merely including in the caption of the complaint the Commonwealth government or a state-wide officer, against whom no relief is sought, will not operate to vest this Court with original jurisdiction. *Pennsylvania State Education Association v. Department of Education,* 101 Pa.Cmwlth. 497, 516 A.2d 1308 (1986). Here, only the food service at a single correctional institution is at issue and Miles does not allege the existence of any *state-wide* policy that would preclude his receiving kosher meals. In fact, Miles requested and received kosher meals while incarcerated at SCI–Graterford and SCI–Camp Hill. Thus, Beard is not indispens-

able to this action. Therefore, inclusion of Beard's name in the caption did not divest the court of common pleas of jurisdiction.

■■■ Second, this Court lacks original jurisdiction over tort actions for money damages that are premised on either common law trespass or a civil action for deprivation of civil rights under 42 U.S.C. § 1983. *Hill v. Pennsylvania Department of Environmental Protection,* 545 Pa. 38, 679 A.2d 773 (1996); *Fawber v. Cohen,* 516 Pa. 352, 532 A.2d 429 (1987); *Balshy v. Rank,* 507 Pa. 384, 490 A.2d 415 (1985). Miles's complaint here requests money damages for a violation of Section 1983.

A recent opinion of our Supreme Court supports our conclusion that jurisdiction rests with the common pleas court. In *Stackhouse v. Pennsylvania State. Police,* 574 Pa. 558, 832 A.2d 1004 (2003), as here, the plaintiff sought injunctive relief *in addition to* money damages. In that case Diane Stackhouse filed suit against the Pennsylvania State Police (State Police), Commissioner Paul J. Evanko and Deputy Commissioner Thomas K. Coury. She alleged that employees of the State Police had undertaken an investigation of her in connection with a job application she had filed. She asserted, specifically, that certain State Police employees were permitted to delve improperly into her personal affairs, including her private inter-personal relationships. She did not allege that the two individuals named as defendants had personally inquired into private matters; she merely contended that they had failed to insure that those who did conduct the investigation were properly trained to inquire only into matters that were appropriate and relevant to it. She also alleged that after she informed Commissioner

the trial court concludes that the filing is frivolous, fails to state a cause of action or is

subject to a valid affirmative defense.

Evanko of what had occurred, he did not take any corrective action. She sought both declaratory/injunctive relief and monetary damages. The defendants filed a preliminary objection asserting that original jurisdiction was with this Court. The common pleas court agreed and transferred the matter. Thereafter, we filed a per curiam order dismissing the case, citing *Fawber*, *Balshy* and *Hill*. The matter was then appealed to the Supreme Court. It noted that the equity cause of action rested upon the same factual allegations as the tort claims for defamation and invasion of privacy. The Court held that, in such a circumstance, the inclusion of a count of declaratory or injunctive relief does not operate to transform the matter into the type of case envisioned by, *inter alia*, Section 761 of the Judicial Code. Further, it noted that were it to conclude otherwise, the result would be to permit a jurisdictional determination to turn "solely on the styling of claims within a complaint" and this would "arguably permit forum shopping through pleading." *Id.* at 564, 832 A.2d at 1008. In addition, it observed that traditionally this Court and others have determined jurisdictional questions based upon *substance*, rather than on the form of the action. It, thus, concluded that the matter had properly been filed in the common pleas court.

Here, as in *Stackhouse*, the allegation upon which the equity and 1983 actions rest are clearly the same. Miles does not even attempt to separate the causes of action by denominating specific counts in his complaint. Accordingly, we conclude that *Stackhouse* controls here.

Additionally, although one might argue that what Miles really wants is a mandatory injunction rather than money damages, *he* is the one who included a request for money damages in his complaint. It is not our function to ignore a portion of his request for relief so that original jurisdiction can be vested in this Court, a court of limited original jurisdiction, rather than in the common pleas court, a court of broad original jurisdiction. Indeed, such an approach is clearly contrary to the holding in *Stackhouse* and to the spirit of Supreme Court cases such as *Gossman v. Lower Chanceford Township Board of Supervisors*, 503 Pa. 392, 469 A.2d 996 (1983), which caution that in determining whether this Court has original jurisdiction over a matter, we must consider that cases within our original jurisdiction are appealable *as of right* to the Supreme Court, and the efficient administration of justice is not well served when that Court is forced to hear collateral matters (in *Gossman*, an issue concerning further costs and counsel fees) because "such an interpretation of [its] jurisdiction would crowd cases involving important and unique issues from [its] allocatur docket." *Id.* at 395–96, 469 A.2d at 998. While we certainly admit that the appeal *sub judice* does not concern a collateral matter, we are not convinced that where, as here, the plaintiff seeks, *inter alia*, money damages in a 1983 type of claim, this matter cannot be adequately addressed without *mandatory* review by the Supreme Court. Accordingly, we hold that jurisdiction was properly vested in the common pleas court on this basis as well.[4]

4. We acknowledge the dissenting opinion's reliance on *Pastore v. State System of Higher Education*, 152 Pa.Cmwlth. 111, 618 A.2d 1118 (1992), but would distinguish it on the basis that there separate counts were pled. Thus, we severed the counts and transferred those involving trespass to the court of common pleas. In this case, however, there are no separate counts pled. Therefore, even assuming, without deciding, that *Stackhouse* would *permit* severance, here it is not practical to do so.

The second reason the common pleas court dismissed the complaint was its conclusion that Miles had failed to exhaust his administrative remedies. There is no question that equity will not lie when there is an adequate administrative remedy that has not been exhausted. *Borough of Brentwood v. Brentwood (Borough) School District*, 662 A.2d 675, 677 (Pa.Cmwlth. 1995). The trial court held that Miles had failed to exhaust his administrative remedies based upon Exhibit 11 to the complaint, a letter from the Grievance Review Officer in Harrisburg, indicating that Miles had failed to comply properly with the grievance procedures and, therefore, no action would be taken on his grievances. However, none of the grievance numbers referenced in that letter matches the grievance number at issue here, which Miles alleges has been pending unanswered for seven months. Thus, there is no evidence in the record, as it now exists, that Miles has failed to do all he could to exhaust his administrative remedies. Accordingly, we conclude that the trial court should not have dismissed the case for this reason, at least at this juncture.

The third reason that the common pleas court dismissed the complaint was its conclusion that Miles had failed to state a cause of action. It is unclear whether the rationale for this was the failure to exhaust administrative remedies or whether the court believed that Miles would not be entitled to relief as a matter of law, even had he exhausted his administrative remedies. We, thus, review it as we would review a demurrer that had been sustained.

The Third Circuit has recognized that, under certain circumstances, inmates have a constitutional right to a special diet for religious reasons. In *De-Hart v. Horn*, 227 F.3d 47 (3rd Cir.2000), the Court noted that if the inmate's belief is sincere and religious in nature, then the court must next inquire whether there is a rational connection between the prison's refusal to provide the food the inmate seeks and a legitimate penological interest. If there is, then the court must further decide if the refusal is reasonable in light of the nature of the penological interest, the inmate's interest in practicing his religion, the overall effect on the prison community in granting the request, and the availability of ways to accommodate the request at a *de minimis* cost. *DeHart*, 227 F.3d at 52. In this instance, Miles alleged that he was an Orthodox Jew, that he had been denied kosher food, and that the consumption of only kosher food is a tenet of his faith. Thus, he pled a cause of action that requires a factual record for his claim to be decided in accordance with the relevant criteria denominated in *DeHart*. Therefore, the trial court erred in dismissing the complaint for failure to state a cause of action.

Because we conclude that dismissal of the case at this early juncture was in error, we reverse the order of the trial court and remand for further proceedings. The denial of *in forma pauperis* status is also reversed, since it was, presumably, based only upon the premise that the complaint had failed to state a cause of action, or was subject to the affirmative defense of failure to exhaust administrative remedies.

### ORDER

**NOW,** April 12, 2004, the order of the Court of Common Pleas of Somerset County in the above-captioned matter is hereby reversed and this case is remanded for further proceedings consistent with this opinion.

Jurisdiction relinquished.

CONCURRING AND DISSENTING OPINION BY Judge FRIEDMAN.

I agree with the majority that the Court of Common Pleas of Somerset County (trial court) erred in dismissing the complaint filed by Mickey Miles (Miles) against Jeffrey A. Beard, Ph.D., (Beard) Secretary of Corrections, Department of Corrections (Department), individually and in his respective official capacity, and the other Respondents, on grounds that Miles failed to exhaust his administrative remedies or that Miles fails to state a cause of action in his complaint. However, I do not agree that the trial court erred in concluding that this court has exclusive original jurisdiction over Miles' complaint.

On July 30, 2003, Miles filed with the trial court a complaint which included the following allegations. Miles is an Orthodox Jew who is incarcerated at the State Correctional Institution at Laurel Highlands (SCI–Laurel Highlands). (Complaint, ¶¶ 2, 5.) On the day of his arrival at SCI–Laurel Highlands, Miles submitted a request for kosher meals, but he received no response. (Complaint, ¶¶ 5–7.) On January 2, 2003, Miles filed a grievance, which was forwarded to the Central Office in Harrisburg. (Complaint, ¶ 8.) There was no response from the Central Office, and, on June 18, 2003, Miles wrote a letter to Beard about the matter. (Complaint, ¶ 17.)

After waiting more than a month for Beard to act, Miles filed his complaint with the trial court. In his prayer for relief, Miles first states that he seeks kosher meals. (Complaint at 5.) Miles then states that he seeks: (1) compensatory damages; (2) punitive damages; (3) declaratory relief; (4) injunctive relief; and (5) any other

relief that the court deems just. (Complaint at 5.)

The trial court dismissed Miles' complaint, concluding, *inter alia*, that, because Miles sued Beard, who is an officer of the Commonwealth, the Commonwealth Court has exclusive original jurisdiction over Miles' complaint. Subsequently, Miles filed an appeal with this court.[1] The question is whether this court or the trial court has original jurisdiction over Miles' complaint.

### I. Judicial Code

Under section 761 of the Judicial Code, the Commonwealth Court has exclusive original jurisdiction over all civil actions against the Commonwealth government, including an officer acting in his official capacity. 42 Pa.C.S. § 761. However, there are some exceptions. Relevant here, the Commonwealth Court does *not* have original jurisdiction over actions against the Commonwealth government in the nature of trespass as to which the Commonwealth government formerly enjoyed sovereign or other immunity. 42 Pa.C.S. § 761(a)(1)(v). Nevertheless, to the extent prescribed by general rule, the Commonwealth Court has ancillary jurisdiction over any claim that is related to a claim within its exclusive original jurisdiction. Section 761(c) of the Judicial Code, 42 Pa.C.S. § 761(c).

Here, in his prayer for relief, Miles expressly states his desire for kosher meals, both now and in the future. In legal terms, Miles seeks an order declaring his right to kosher meals and enjoining Beard and the other Respondents from acting, or failing to act, with respect to that right.

---

1. Miles also filed a complaint in this court's original jurisdiction, docketed at 549 M.D. 2003, which is virtually identical to the complaint he filed with the trial court. However, by *per curiam* order dated August 19, 2003, this court closed docket number 549 M.D. 2003.

Thus, because Miles seeks equitable relief against a Commonwealth officer acting in his official capacity, I submit that Miles' equitable claims belong in this court's exclusive original jurisdiction.

The majority concludes that this court lacks original jurisdiction over Miles' complaint without ever considering the plain language of section 761 of the Judicial Code. Instead, the majority relies upon the Pennsylvania Supreme Court's decisions in *Stackhouse v. Pennsylvania State. Police,* 574 Pa. 558, 832 A.2d 1004 (2003); *Hill v. Pennsylvania Department of Environmental Protection,* 545 Pa. 38, 679 A.2d 773 (1996); *Fawber v. Cohen,* 516 Pa. 352, 532 A.2d 429 (1987); and *Balshy v. Rank,* 507 Pa. 384, 490 A.2d 415 (1985). (*See* Majority op. at 165.) However, as the following discussion indicates, *Hill, Fawber,* and *Balshy* are not relevant here, and *Stackhouse* does not support the majority's conclusion.

## II.  Case Law

### A.  Pennsylvania Supreme Court

In *Balshy,* our supreme court held that the Commonwealth Court does *not* have original jurisdiction over actions against Commonwealth officers acting in their official capacity for money damages based upon tort liability. In *Hill,* our supreme court reached the same conclusion based on *Balshy.* In *Fawber,* our supreme court held that the Commonwealth Court *does* have exclusive original jurisdiction over actions for equitable or declaratory relief because such actions are not in the nature of a trespass.

However, in *none* of those cases did our supreme court address whether the courts of common pleas or this court would have original jurisdiction over hybrid complaints, which, as here, set forth claims in the nature of trespass *and* claims for equitable and declaratory relief against the Commonwealth or a Commonwealth officer acting in an official capacity. Our supreme court *did* address this question in *Stackhouse.*

### 1.  Stackhouse

In *Stackhouse,* an employee filed a three-count complaint in the court of common pleas against her employer, the Pennsylvania State Police. The complaint alleged violations of her right to privacy and reputation stemming from an internal investigation. Count I of the complaint sought declaratory relief, and Counts II and III sought monetary damages. The common pleas court transferred the matter to this court, concluding that the Commonwealth Court had original jurisdiction over the matter. However, this court, relying upon *Hill, Balshy* and *Fawber,* dismissed the case *per curiam* for lack of original jurisdiction.[2] The employee appealed the dismissal to our supreme court.

The question before our supreme court in *Stackhouse* was whether the courts of common pleas or the Commonwealth Court had original jurisdiction over the employee's hybrid complaint. Our supreme court filed three separate opinions on the matter.

Three justices ruled that, to determine jurisdiction, the courts must look to the substance of the complaint, i.e., its core, rather than its form, to determine whether the complaint sets forth an action in trespass or an action in equity. *Id.* (Saylor, J., joined by Castille, J., and Lamb, J.). These justices concluded that the employee's complaint sounded in trespass because the employee's request for redress stemmed from state police officials unlaw-

2. This court concluded that the case was a tort action in the nature of an action in trespass which fell outside this court's original jurisdiction. *See Stackhouse.*

fully delving into her intimate inter-personal relationships during an internal affairs investigation. The justices stated that the inclusion of a count for declaratory or injunctive relief did not transform the complaint into a complaint in equity. Thus, these justices remanded the case to the courts of common pleas. *Id.*

Justice Newman wrote a concurring opinion, in which she stated that it was unnecessary to re-characterize the claim for declaratory and injunctive relief as a compensatory claim to determine that the matter belonged in the courts of common pleas. *Id.* (Newman, J. concurring). Justice Newman explained that matters within the Commonwealth Court's ancillary jurisdiction must fall within the court's jurisdiction as defined by the general rule in section 761(a) of the Judicial Code. *See* 42 Pa.C.S. § 761(c) (stating that ancillary jurisdiction exists "[t]o the extent prescribed by general rule"); *see also* 42 Pa.C.S. § 761(a) (stating the "general rule"). Justice Newman then concluded that the entire matter must be adjudicated in the courts of common pleas because Counts II and III of the employee's complaint are outside the general jurisdiction of the Commonwealth Court.

Finally, three justices concluded that, pursuant to section 761(a)(1) of the Judicial Code, the Commonwealth Court unambiguously had original and exclusive jurisdiction over the claim for injunctive relief. *Stackhouse* (Eakin, J., dissenting, joined by Cappy, J., and Nigro, J.). Equally clear to the justices was that the Commonwealth Court lacked original jurisdiction over the monetary claims. Faced with this "conundrum of jurisdiction," these justices concluded that the Commonwealth Court should have pendant jurisdiction over the monetary claims until it decided whether equity should lie because there is not an adequate remedy at law. *Id.* at 559, 832

A.2d at 1012. The justices state that, depending on the determination of that threshold question, the Commonwealth Court would either dismiss or decide the equity claims and then transfer the remaining claims to the courts of common pleas. *Id.*

## 2. Applying Stackhouse

In my view, six of the seven justices of our supreme court would oppose the majority's remand of Miles' entire complaint to the trial court.

First, following Justices Saylor, Castille and Lamb, the substance, or core, of Miles' complaint is that he is entitled to receive, and wants to receive, kosher meals. The monetary damages that Miles seeks could *never* provide Miles with such relief; indeed, there is nothing before us to indicate that SCI–Laurel Highlands offers kosher meals for purchase by inmates. Thus, despite the request for damages, Miles' complaint, at its core, sounds in equity, *not* trespass, and belongs in this court's original jurisdiction.

Second, following Justices Eakin, Cappy and Nigro, there can be no dispute that this court has exclusive original jurisdiction over Miles' claims for declaratory and injunctive relief. Moreover, these justices would hold that this court has pendant jurisdiction over Miles' monetary claims. Thus, after this court addresses Miles' equitable claims, this court would transfer the remaining claims for monetary damages to the courts of common pleas.

## B. Commonwealth Court

Although our supreme court was divided on the proper approach for determining jurisdiction when faced with a hybrid complaint, an *en banc* panel of this court was able to reach a consensus in *Pastore v. State System of Higher Education,* 152 Pa.Cmwlth. 111, 618 A.2d 1118 (1992). I

note that the majority's position in this case undeniably is contrary to this court's *en banc* decision in *Pastore*. I consider *Pastore* here because of the limited guidance provided by our supreme court in *Stackhouse*.

The plaintiff in *Pastore* filed a complaint in one of the courts of common pleas against the Commonwealth, seeking equitable relief *and* damages. The court of common pleas transferred the matter to this court. This court stated, "Actions seeking injunctions against the state, even with ancillary claims for damages, constitute a familiar segment of this court's trial jurisdiction." *Id.* at 1120. However, this court recognized its jurisdictional limitations and, thus, proceeded to examine the complaint to determine its precise nature. After doing so, this court concluded that the Commonwealth Court had original and exclusive jurisdiction over the equitable counts of the complaint but did *not* have original jurisdiction over a claim sounding in trespass. Having reached those conclusions, this court decided the merits of the equitable claims and re-transferred the trespass claim to the court of common pleas. *Id.*

Applying *Pastore* here, I would conclude that this court should decide the merits of Miles' equitable claims and, afterward, re-transfer the matter to the trial court.[3]

### III. Indispensable Party

In addition to relying on *Hill*, *Balshy* and *Fawber*, the majority concludes that this court lacks original jurisdiction over Miles' complaint because Beard is not an indispensable party. (Majority op. at 164.) However, in reaching that conclusion, the majority does not even consider the test for determining whether a party is indispensable.

Our supreme court has stated that, to determine whether a party is indispensable, it is necessary to consider: (1) whether the party has an interest related to the claim; (2) if so, the nature of that interest; (3) whether the interest is essential to the merits of the issue; and (4) whether justice can be afforded without violating the due process rights of the party. *CRY, Inc. v. Mill Service, Inc.*, 536 Pa. 462, 640 A.2d 372 (1994).

First, as the Secretary of Corrections, Beard has statutory duties related to the administration, management and supervision of the services provided by the state correctional institutions, including SCI–Laurel Highlands. *See* section 901–B of The Administrative Code of 1929 (Administrative Code), Act of April 9, 1929, P.L. 177, *added by* the Act of December 30, 1984, P.L. 1299, 71 P.S. § 310–1. Thus, Beard has an interest related to Miles' claim that SCI–Laurel Highlands has failed to provide him with kosher meals.

Second, pursuant to section 506 of the Administrative Code, 71 P.S. § 186, Beard, in his official capacity, has promulgated a regulation governing the conduct of his employees at SCI–Laurel Highlands with respect to the religious needs of the inmates, including Miles. Consistent with constitutional law, the regulation at 37 Pa. Code § 93.6 provides that the Department

---

**3.** The majority attempts to distinguish *Pastore* based on the fact that the plaintiff in *Pastore* pled separate counts. (Majority op. at 165 n. 4.) The majority states that, because separate counts are not pled here, it is not "practical" to sever the equity claims from the damages claim. *Id.* However, such an approach elevates form over substance. Clearly, Miles' request for kosher meals and injunctive relief is separate from his claim for money damages for the violation of his civil rights. Thus, I would not find it impractical to decide the equity claims and then transfer the case to the trial court for disposition of the damages claim.

*will* make reasonable accommodations for religious dietary restrictions.[4] Thus, the nature of Beard's interest is an implicit allegation that he failed to enforce his own regulation when Miles informed him by letter that Beard's employees at SCI–Laurel Highlands were not complying with 37 Pa.Code § 93.6.

Third, Beard's interest in the Department's employees' complying with 37 Pa. Code § 93.6 is essential to the merits of this case because, to some extent, the merits of this case rest on the requirements of 37 Pa.Code § 93.6, and this court must give great deference to Beard's interpretation of his own regulation. *See Mirarchi v. Department of Corrections*, 811 A.2d 1096 (Pa.Cmwlth.2002).

Fourth, if Miles were to prevail against Beard without this court giving Beard an opportunity to be heard concerning his failure to enforce 37 Pa.Code § 93.6, then Beard would have been denied his due process rights. Indeed, if Miles were to prevail, this court could order Beard to require the Department's employees at SCI–Laurel Highlands to serve Miles kosher meals.[5] Certainly, Beard has the right to defend his failure to take such action after he received Miles' letter. Thus, unlike the majority, I would conclude that Beard is an indispensable party.

## IV. Collateral Matters

The majority notes that cases within this court's original jurisdiction may be appeal-ed as of right to our supreme court. (Majority op. at 164–65.) The majority then states that, under *Gossman v. Lower Chanceford Township Board of Supervisors*, 503 Pa. 392, 469 A.2d 996 (1983), the efficient administration of justice is not well served when our supreme court is forced to hear *collateral* matters, viz., a party's entitlement to further costs and counsel fees. (Majority op. at 164–65.) The majority concludes, "While the appeal *sub judice* does not concern a collateral matter, we are not convinced that where, as here, the plaintiff seeks, *inter alia,* money damages in a 1983 type of claim, this matter cannot be adequately addressed without **mandatory** review by the Supreme Court." (Majority op. at 165) (emphasis in original).

First, I vigorously object to the majority's implication that an inmate's lawsuit alleging the violation of the law is the equivalent of a collateral action for further costs and counsel fees. I doubt that our supreme court would equate the two. Second, having conceded that Miles' complaint does *not* involve collateral matters, the majority's reliance on *Gossman* is misplaced. Third, I am not aware of any rule of law that allows this court, or any other court, to overlook the laws governing jurisdiction and transfer a case to another court because that other court can "adequately address" the matter and because the complainant, who happens to be an

4. Section 506 of the Administrative Code states that the heads of all administrative departments are empowered to prescribe regulations for the government of their respective departments. 71 P.S. § 186. The regulation at 37 Pa.Code § 93.6 states it was promulgated pursuant to section 506 of the Administrative Code.

5. The majority states that Miles seeks "absolutely no relief" from Beard. (Majority op. at 164.) I disagree. Miles seeks declaratory and injunctive relief against *all* Respondents and any relief that the court deems just. Thus, at a minimum, Miles seeks an order against Beard enjoining his failure to enforce the Department's regulation at SCI–Laurel Highlands. Moreover, pursuant to Miles' general prayer for relief, this court could order Beard to take other action at SCI–Laurel Highlands, e.g., monitor its compliance with 37 Pa.Code § 93.6.

inmate, should not be allowed to appeal as of right to our supreme court.

Accordingly, unlike the majority, I would rule that this court has original jurisdiction over the equity portion of Miles' complaint and pendant jurisdiction over the damages portion.