IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| Borough of Pleasant Hills | : | |
| | : | |
| v. | : | No. 621 C.D. 2023 |
| | : | |
| Commonwealth of Pennsylvania, | : | Argued: February 6, 2024 |
| Department of Transportation, | : | |
| Appellant | : | |

BEFORE:   HONORABLE PATRICIA A. McCULLOUGH, Judge
                    HONORABLE ELLEN CEISLER, Judge
                    HONORABLE STACY WALLACE, Judge


OPINION
BY JUDGE McCULLOUGH                                    FILED: March 6, 2024


The Commonwealth of Pennsylvania Department of Transportation (PennDOT) appeals from the May 23, 2023 judgment (Modified Verdict) entered in the Court of Common Pleas of Allegheny County (trial court) in favor of the Borough of Pleasant Hills (Borough) and finding that PennDOT is responsible for the stability of the slope of, and maintaining safe sight distances in an area located within the Borough adjacent to, State Route 51 (SR 51) and Pleasant Hills Boulevard.  The trial court also granted the Borough's request for damages as to its eminent domain *de facto* taking claim and referred the matter to the Board of Viewers to assess this award.  On appeal, PennDOT challenges the trial court's decision on multiple bases, including that the court lacked jurisdiction over this matter where original jurisdiction was vested in the Commonwealth Court, that its determination conflicted with provisions of the State Highway Law,[1] and that the trial court erred in finding that PennDOT's actions resulted

---

[1] Act of June 1, 1945, P.L. 1242, *as amended*, 36 P.S. §§ 670-101 to 670-1102.

in a *de facto* taking under the Eminent Domain Code (Code).[2]  Upon careful review, we affirm.

## I.    Background

On January 17, 2018, the Borough filed a Complaint against PennDOT in the trial court seeking declaratory relief that it was responsible for the continued maintenance and repair of the slope located at the intersection of SR 51 and Pleasant Hills Boulevard and to restore the sight distance for vehicles traveling in that area. PennDOT filed preliminary objections to the Complaint, arguing that the trial court lacked subject matter jurisdiction over declaratory judgment actions brought against the Commonwealth and that such actions are properly brought before this Court.  The trial court granted the Borough leave to file an Amended Complaint, which the Borough filed in April of 2018, stating claims for negligence (Count I), eminent domain/*de facto* taking under the Code (Count II), alteration of lateral support (Count III), negligent alteration of lateral support (Count IV), trespass (Count V) and a request for a declaratory judgment (Count VI).  (Reproduced Record (R.R.) at 064a-080a.) PennDOT then filed preliminary objections again challenging the trial court's jurisdiction over this matter, which the court overruled on June 11, 2018.

The trial court granted the Borough leave to file a Second Amended Complaint to request appointment of a Board of Viewers pursuant to Section 502 of the Code,[3] which the Borough filed on June 29, 2018.  The Second Amended Complaint included the same counts as its previous filing and amended the eminent domain/*de facto* taking claim at Count II to request the appointment of a Board of

---

[2] 26 Pa. C.S. §§ 101-1106.

[3] Section 502(c)(1) of the Code allows a property owner that asserts that its property interest has been condemned without the filing of a declaration of taking to file a petition for the appointment of a board of viewers setting forth the factual basis of the petition.  26 Pa. C.S. § 502(c)(1).

2

Viewers to assess appropriate damages. (R.R. at 112a-30a.) On July 19, 2018, PennDOT filed an Answer, which included a New Matter and Preliminary Objections to Count II of the Second Amended Complaint. PennDOT lodged several preliminary objections to the Borough's request for the appointment of a Board of Viewers and requested that the trial court dismiss the petition with prejudice. (R.R. at 144a-62a.)

The case proceeded to a one-day bench trial on May 29, 2019, at which several witnesses testified including PennDOT engineer Dean Poleti, public works superintendent for the Borough Jamie Smith and engineer for the Borough Jason Stanton. Mr. Poleti testified that PennDOT widened SR 51 in the 1950s by increasing its width from 30 to 54 feet as a result of a condemnation in the area of Pleasant Hills Boulevard, and that this condemnation was recorded in the office of the Allegheny County Recorder of Deeds. (R.R. at 208a-10a.) This modification changed the grade of the area and altered the slope adjacent to SR 51 that supported Pleasant Hills Boulevard, making the incline steeper. (R.R. at 210a-11a.) With respect to the sight distances, Mr. Poleti recognized that there is impairment at the intersection, and the traffic study PennDOT obtained showed that, whether a driver is entering or exiting Pleasant Hills Boulevard onto SR 51, the sight distances in both the left and right directions were inadequate. (R.R. at 214a-15a, 219a.)

In addition to the issue of sight distance, Mr. Poleti relayed that PennDOT removed the toe of the slope between SR 51and Pleasant Hills Boulevard and installed a storm drain. Mr. Poleti testified that the slope provided lateral support for Pleasant Hills Boulevard, that the area is located within PennDOT's right-of-way, and that to his knowledge the Borough had not taken any actions that would have altered or affected the stability of the slope. (R.R. at 222a, 226a-31a.) Mr. Poleti confirmed that

3

Pleasant Hills Boulevard existed prior to SR 51, and that when SR 51 was constructed it cut the Boulevard in half.

Mr. Smith testified that Pleasant Hills Boulevard is one of the roads that he maintained and that, in his experience, drivers need to be as careful as possible when trying to access or pull out of the roadway. He stated that because the steep slope makes it difficult to see approaching traffic, turning out of the roadway for some vehicles can be a "harrowing experience." (R.R. at 238a.) Mr. Smith testified that he reviewed records relative to whether the Borough had taken any action to alter the slope or grade at the intersection, and he found no indication that the Borough had made modifications. (R.R. at 239a-40a, 247a.) He recalled that the road began to deteriorate to a substantial degree in June of 2017, and that the slope has continued to move downhill. Mr. Smith relayed that PennDOT did not respond to the Borough's requests that it address the stability of the slope located within its right-of-way and that the Borough has sustained damage to the berm and guardrail along Pleasant Hills Boulevard necessitating the installation of orange safety fencing and lighted barricades as the road continued to erode. (R.R. at 245a-46a, 248a.)

Borough Engineer Mr. Stanton opined within a reasonable degree of professional certainty that PennDOT's widening of the roadway caused the dangerous condition of sight distance impairment, and that PennDOT had a duty to fix that condition. (R.R. at 314a-15a.) He saw no evidence that the Borough undertook any action to cause the sight distance issue. (R.R. at 315a.) Mr. Stanton further opined that PennDOT caused the dangerous condition of the erosion of the slope/removal of lateral support, and that PennDOT was responsible for remediating this condition. (R.R. at 315a.) He explained that the Borough would not be able to perform any maintenance

4

in this area without PennDOT's permission, as it would need to obtain a highway occupancy permit (HOP) to enter PennDOT's right-of-way. (R.R. at 317a.)

On April 18, 2022, after visiting the intersection, the trial court issued a verdict granting the Borough's request for a declaratory judgment providing that PennDOT is solely responsible for the condition of the area, for the continued maintenance and repair of the slope, and for restoring the sight distance. In the alternative, the trial court granted relief in favor of the Borough and against PennDOT in the amount of $350,000. The trial court additionally granted the Borough's request for damages pursuant to Count II of the Second Amended Complaint and referred this matter to the Board of Viewers for an award of damages. (R.R. at 525a.)

PennDOT filed post-trial motions which the trial court denied on May 23, 2023, with the exception of PennDOT's request to strike the alternative relief. The trial court amended the verdict "to reflect its agreement that the Borough was not seeking monetary damages in the amount to effectuate repairs, only that PennDOT is responsible for the repairs of the slope and correction of the sight distance deficiency." (PennDOT's Br., App. A). The trial court's Modified Verdict provided:

> The [trial c]ourt finds in favor of the Borough of Pleasant Hills on the request for Declaratory Judgment. [PennDOT], and not the Borough of Pleasant Hills, is responsible for the condition of the area and for the continued maintenance and repair of the slope between State Route 51 [SR 51] and Pleasant Hills Boulevard. [PennDOT] is solely responsible to restore the stability of this slope and to restore sight distance for vehicles entering and exiting Pleasant Hills Boulevard.
>
> In addition, the Borough's request for damages in Count II of the Second Amended Complaint is GRANTED and this matter is referred to the Board of Viewers for an

5

award of damages, as set forth in Count II of the Second Amended Complaint.

*Id.*, App. B.

PennDOT appealed from the Modified Verdict and complied with the trial court's order to file a Rule 1925(b) statement. Pa.R.A.P. 1925. The trial court filed its Rule 1925(a) opinion on July 27, 2023.[4]

## II. Discussion

## A. Original Jurisdiction

PennDOT first challenges the trial court's jurisdiction over this case and argues that this Court, and not the trial court, had original jurisdiction to hear it.[5] PennDOT argues that, pursuant to Section 761 of the Judicial Code,[6] this Court has

---

[4] With respect to the appealability of the Modified Verdict, we note that preliminary objections are the exclusive method under the Code of raising objections to a petition for the appointment of a board of viewers alleging a *de facto* taking. *Genter v. Blair County Convention & Sports Facilities Authority*, 805 A.2d 51, 54 n.6 (Pa. Cmwlth. 2002); *see also* 26 Pa. C.S. § 504(d)(1) (providing that "[a]ny objection to the appointment of viewers may be raised by preliminary objections filed within 30 days after receipt of notice of the appointment of viewers). In that regard, preliminary objections in *de facto* taking cases render final and appealable a trial court order overruling preliminary objections to a petition for the appointment of viewers, such that where a party fails to file preliminary objections, we lack jurisdiction to consider that party's appeal. *Gerg v. Township of Fox*, 107 A.3d 849, 852 (Pa. Cmwlth. 2015).

Here, PennDOT did file the requisite preliminary objections, albeit as part of the same document as its Answer to the Second Amended Complaint. Because Section 504 of the Code does not require any specific form of preliminary objections, we conclude that PennDOT has complied with its obligation under the Code, and that the Modified Verdict referring this matter to the Board of Viewers effectively overruled the preliminary objections and is a final, appealable order.

[5] Because this appeal concerns issues of subject matter jurisdiction and statutory interpretation, our standard of review is *de novo* and our scope of review is plenary. *Scott v. Pennsylvania Board of Probation & Parole*, 284 A.3d 178, 185–86 (Pa. 2022).

[6] Section 761 states in relevant part as follows:

**(Footnote continued on next page…)**

6

exclusive jurisdiction over declaratory judgment actions brought against the Commonwealth, and that because the core of the Borough's complaint is a declaratory judgment action regarding the maintenance/sight distance responsibility of the slope area, its complaint was improperly filed in the trial court. (PennDOT's Br., at 15-21.)

We begin by observing that this Court has original jurisdiction in only a narrow class of cases. *Stackhouse v. Commonwealth*, 832 A.2d 1004, 1007 (Pa. 2003) (plurality). That class is defined by Section 761 of the Judicial Code, which provides that, as a general rule, the Commonwealth Court has original jurisdiction in cases asserted against "the Commonwealth government, including any officer thereof, acting in his official capacity." 42 Pa. C.S. § 761(a)(1). However, this rule is subject to certain enumerated exceptions, including that this Court does not have original jurisdiction over actions or proceedings conducted pursuant to Chapter 85 (setting forth exceptions to sovereign immunity) relating to the creating of a dangerous condition[7] and to actions concerning eminent domain proceedings.

---

(a) General rule.—The Commonwealth Court shall have original jurisdiction of all civil actions or proceedings:

(1) Against the Commonwealth government, including any officer thereof, acting in his official capacity except: . . .

(ii) eminent domain proceedings;

(iii) actions or proceedings conducted pursuant to Chapter 85 (relating to matters affecting government units)[.]

42 Pa. C.S. § 761(a)(1)(ii)-(iii).

[7] As the trial court observed, Section 8522(b)(4) of Chapter 85 is included in Section 761 as an exception to the Commonwealth Court's original jurisdiction pursuant to which the Commonwealth may be held liable for:

**(Footnote continued on next page…)**

7

Our Supreme Court's decision in *Stackhouse* is instructive. In *Stackhouse*, the plaintiff filed a three-count complaint against her employer, the Pennsylvania State Police, alleging that her constitutional rights were violated by an improper internal investigation by her supervisors, and she sought injunctive relief in addition to money damages. *Stackhouse*, 832 A.2d at 1005-06. The court of common pleas concluded that it lacked jurisdiction over the complaint and transferred the case to this Court which disagreed, noting that the complaint was essentially a "tort action in the nature of trespass for money damages as redress for an unlawful injury" and, therefore, fell outside of this Court's original jurisdiction. *Id.* at 1006.

On appeal, our Supreme Court found that "the sum and substance of [the plaintiff's] complaint, then, [was] that her privacy and reputational interests were invaded when state police officials unlawfully delved into her intimate inter-personal relationship during an internal affairs investigation, and that she [was] entitled to compensation accordingly." *Id.* at 1008. The Supreme Court concluded that the equity cause of action was based on the same factual allegations as the tort claims for defamation/invasion of privacy and that under these circumstances, "the inclusion of a count for declaratory or injunctive relief premised upon the same events cannot properly be understood to transform the complaint from one sounding in trespass into the type of matter contemplated . . . by the Legislature, as belonging within the

---

A dangerous condition of Commonwealth agency real estate and sidewalks, including Commonwealth-owned real property, leaseholds in the possession of a Commonwealth agency and Commonwealth-owned real property leased by a Commonwealth agency to private persons, and highways under the jurisdiction of a Commonwealth agency, except conditions described in paragraph (5).

42 Pa. C.S. § 8522(b)(4); (*see also* Trial Ct. Op., at 3.)

Commonwealth Court's original jurisdiction." *Id.* Accordingly, the Supreme Court determined that the matter had properly been filed in the court of common pleas.

Here, as in *Stackhouse*, the allegations and circumstances upon which the Borough's negligence, *de facto* taking, and equitable claims are based are the same. The inclusion of a count for declaratory relief in a multi-count complaint cannot transform this action from one sounding in negligence/*de facto* taking into one belonging in this Court's narrow original jurisdiction. Therefore, we conclude that the core of the Borough's complaint is a tort and eminent domain action seeking monetary damages and, as such, is an action over which this Court lacks original jurisdiction under Section 761 of the Judicial Code. *See id.*

We also emphasize that in cases where the plaintiff seeks both equitable relief and money damages that it "is not our function to ignore a portion of [the] request for relief so that original jurisdiction can be vested in this Court, a court of limited original jurisdiction, rather than in the common pleas court, a court of broad original jurisdiction." *Miles v. Beard*, 847 A.2d 161, 165 (Pa. Cmwlth. 2004). Adopting such an approach would run contrary to the precept that in determining whether this Court has original jurisdiction over a matter we must consider that such cases are appealable as of right to our Supreme Court, and the efficient administration of justice is not well served when that Court is forced to hear collateral matters because "such an interpretation of its jurisdiction would crowd cases involving important and unique issues from its allocatur docket." *Id.* (citation omitted). Accordingly, we conclude that jurisdiction was properly vested in the trial court on this basis as well.

9

## B. State Highway Law

PennDOT next argues that the trial court ignored the plain language of Section 513 of the State Highway Law[8] in assigning maintenance responsibilities for the slope to PennDOT. According to PennDOT, this provision authorizes the Secretary of Transportation to determine the scope and type of maintenance activities PennDOT will perform on state highways located within boroughs and that PennDOT has historically exercised this authority by assuming maintenance responsibility for roadway features between curb lines—which it refers to as its "curb-to-curb policy." (PennDOT's Br., at 21-27.)

Section 513 of the State Highway Law provides that PennDOT "shall, at the expense of the Commonwealth improve or reconstruct and maintain all State highways within boroughs and incorporated towns, to such width and of such type as shall be determined by the secretary." 36 P.S. § 670-513. However, in asserting that it is vested with exclusive authority to determine the extent of its own maintenance responsibilities, PennDOT wholly ignores the testimony at trial which established that it condemned the area at issue and that its modifications to the roadway caused the dangerous conditions. As the trial court aptly explained:

> [PennDOT's] position since at least 1999 is that neither [the slope nor sight distance] issues were PennDOT's responsibility. [PennDOT] bases its position merely upon the law which restricts its maintenance responsibility in the Borough from "curb to curb." That argument simply leaves an area outside the curb but within its own right of way that [PennDOT] need not maintain. However, in this case, it is not a question of general maintenance but of [PennDOT's] direct damage to the slope's lateral support that is the question.

---

[8] 36 P.S. § 670-513.

(Trial Ct. Op., at 4.)

We agree with the trial court's assessment and find no merit in PennDOT's contention that the Modified Verdict assigning it responsibility to maintain the condition of an area in its own right-of-way as a result of condemnation conflicts with Section 513.

With respect to the trial court's ruling requiring PennDOT to restore safe sight distances at the intersection, PennDOT contends that the trial court's decision runs contrary to Section 420 of the State Highway Law. (PennDOT's Br., at 27-31.) PennDOT points to the following provisions, which address the issuance of permits:

> (b) The secretary may issue permits for the opening of streets and driveways onto State highways and for the opening of the surface and occupancy of State highways on terms and conditions established in department regulations.
> . . . .
>
> (2) No person, municipality or municipality authority shall open a driveway onto a State highway or open the surface of or occupy a State highway without a permit.

36 P.S. § 670-420(b)(2).

Despite its reliance on Section 420, PennDOT simultaneously maintains that the "issuance of an HOP or the Borough's unpermitted connection to the state highway system are not at issue in the present matter" and that "what is at issue is the question of which party has the responsibility for ensuring adequate sight distance[.]" (PennDOT's Br., at 29.) We agree. As the trial court explained with respect to the responsibility for maintaining safe sight distance:

> [PennDOT's] argument [] ignores the fact that it is not so much a condition of maintenance but [PennDOT's] direct creation on the access by significantly reducing sight

11

distance safety when it widened SR 51 and reduced safe access to SR 51 from Pleasant Hills Boulevard. . . .

[I]t has been recognized by PennDOT and validated by traffic studies performed at the behest of PennDOT that there has been a problem with sight distance since the widening. As a result of PennDOT's study it was determined that whether entering or exiting Pleasant Hills Boulevard onto SR 51, the sight distance on both the left and right direction was not sufficient. This is because of PennDOT's widening of SR 51 as the sight distance was adequate prior to PennDOT's alterations. . . .

It is also expert witness opinion that PennDOT had a duty to maintain an area where [it] created a dangerous condition. And that the dangerous condition of the sight distance was created by PennDOT.

(Trial Ct. Op., at 4-6) (record citations omitted).

Based on the foregoing, we conclude that PennDOT's argument that the trial court's ruling on the sight distance issue somehow conflicts with Section 413 governing the issuance of permits lacks merit.

### C. *De Facto* Taking

PennDOT next challenges the trial court's decision with respect to the Borough's *de facto* taking claim at Count II of the Second Amended Complaint and the trial court's appointment of a Board of Viewers to assess damages. PennDOT's argument is twofold in that it asserts that the Borough was required to file a separate action under the Code rather than include it in a multi-count complaint and that it failed to meet its burden of proving a *de facto* taking as a result of PennDOT's conduct. (PennDOT's Br., at 31-39.)

With respect to its argument that the Borough was required to bring its *de facto* taking claim as a separate action, PennDOT relies on a footnote in *Peters*

12

*Township v. Russell*, 121 A.3d 1147, 1152 n.12 (Pa. Cmwlth. 2015), which states that "a *de facto* condemnation claim is not an affirmative defense" and cannot "be presented as a counterclaim but only as a separate petition that conforms to the Eminent Domain Code." (PennDOT's Br., at 33.)

Here, however, the underlying procedural posture did not involve a defendant raising a *de facto* taking claim as an affirmative defense to a plaintiff's complaint or as a counterclaim. Rather, the Borough included it as one of several bases for recovery in a multi-count complaint. As PennDOT has cited no authority to support its contention that the Borough was prohibited from including its *de facto* taking claim as part of its broader complaint resting on the same allegations, this issue merits no relief.

PennDOT lastly contends the trial court erred in finding that the Borough met its heavy burden of establishing a *de facto* taking with regard to its property. PennDOT describes the Borough's damage claims as minimal at best and it argues that the Borough failed to demonstrate that exceptional circumstances deprived it of the beneficial use and enjoyment of its property or that any damages were caused by PennDOT's conduct. (PennDOT's Br., at 34-39.)

> In order to prove a *de facto* taking, the property owner must establish exceptional circumstances that substantially deprived him of the beneficial use and enjoyment of his property. This deprivation must be caused by the actions of an entity with eminent domain powers. Also, the damages sustained must be an immediate, necessary and unavoidable consequence of the exercise on the entity's eminent domain powers. A *de facto* taking is not a physical seizure of property; rather, it is an interference with one of the rights of ownership that substantially deprives the owner of the beneficial use of his property. The beneficial use of the

property includes not only its present use, but all potential uses, including its highest and best use.

Property owners alleging a *de facto* taking bear a heavy burden of proof. . . . Further, there is no bright line test to determine when a government action results in a *de facto* taking; each case turns on its own facts.

*York Road Realty Company, L.P. v. Cheltenham Township*, 136 A.3d 1047, 1050-51 (Pa. Cmwlth. 2016) (citation and emphasis omitted).

The trial court in the instant case found that the Borough met this standard and explained its rationale as follows:

It was conclusively established in testimony and documentary evidence at trial [] and not disputed that [PennDOT] condemned the area at issue which was widened and the condemnations were recorded in the recorder of deeds of Allegheny County. [PennDOT] condemned the area at issue and they are responsible for it. According to 26 Pa.C.S. Section 714 of the Eminent Domain Code all condemners shall be liable for damages to the property abutting the area of the improvement resulting from change of a road or highway, permanent interference with access or injury to surface support, whether or not the property is taken.[9]

Evidence at trial was more than adequate to establish that PennDOT exercised its control over the area it condemned for its improvements. It alone was responsible for the work there and for the extensive and permanent damage to the roadway in question and access to it. Those damages it left unaddressed as the department let the chips fall where they may. [PennDOT] denied any responsibility for creating these dangerous conditions in the face of overwhelming

---

[9] Section 714 of the Code states: "All condemnors, including the Commonwealth, shall be liable for damages to property abutting the area of an improvement resulting from change of grade of a road or highway, permanent interference with access or injury to surface support, whether or not any property is taken." 26 Pa. C.S. § 714.

14

evidence to the contrary throughout the trial. In conclusion, the findings that [PennDOT] is responsible for the damage to the slope supporting Pleasant Hills Boulevard, and the dangerous sight distance problem at the access to SR 51 should be affirmed.

(Trial Ct. Op., at 6-7.)

After review, we agree with the trial court's determination that exceptional circumstances did exist that impacted the Borough's beneficial use and enjoyment of its property and that the dangerous sight distance at the intersection and erosion to the slope were caused by PennDOT's actions. Accordingly, the Borough sustained its burden of establishing that a *de facto* taking occurred with respect to its property. PennDOT's argument to the contrary lacks merit.

For the above reasons, we affirm the trial court's May 23, 2023 Modified Verdict.

_____
PATRICIA A. McCULLOUGH, Judge

15

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Borough of Pleasant Hills :
:
          v. : No. 621 C.D. 2023
:
Commonwealth of Pennsylvania, :
Department of Transportation, :
               Appellant :

## ***ORDER***

AND NOW, this 6th day of March, 2024, the May 23, 2023 judgment entered in the Allegheny County Court of Common Pleas is hereby AFFIRMED.

_____
PATRICIA A. McCULLOUGH, Judge